NICHOLS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 24, 1901.)

No. 1,412.

1. INTERNAL REVENUE—STAMP TAX—FOREIGN CIGARS ADMITTED FREE OF DUTY.
Under the regulations of the treasury department permitting a passenger entering the United States to bring in free of duty, as personal effects, not exceeding 50 cigars, Mexican cigars so brought into this country by passengers or travelers are not subject to internal revenue tax; and one to whom such cigars have been given may retain the same in his possession unstamped, or may give them away, without being subject to the penalty imposed by Rev. St. § 3397, on every person "who buys, receives or has in his possession any cigars on which the tax to which they are liable has not been paid."

2. CRIMINAL LAW—SENTENCE—POWER OF COURT TO REVISE.
The mere announcement of the sentence imposed on a defendant who has been convicted of a criminal offense does not preclude the court from reconsidering such sentence, and imposing a heavier one, before the sentence announced has been entered of record, and while the defendant is

still within the bar; nor can it be presumed that the sentence was increased because of a statement by defendant's counsel of his intention to appeal, made after the first sentence was announced.

In Error to the District Court of the United States for the Eastern District of Missouri.

W. H. Clopton, for plaintiff in error.

Edward A. Rozier, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. Samuel C. Nichols, the plaintiff in error, hereafter designated as the "defendant," was indicted by the grand jury of the United States for the Eastern division of the Eastern district of Missouri for alleged violations of the internal revenue law. The indictment contained four counts, but the jury found the defendant guilty on the third count only; and the district attorney entered a nolle prosequi as to the other counts, which will not be further mentioned. The defendant entered a plea of not guilty. The case was tried before Judge Philips, who had been duly assigned to hold the court in the Eastern district of Missouri in the absence of Judge Adams. Upon the verdict of the jury finding the defendant guilty on the third count of the indictment, the court pronounced sentence and judgment, and thereupon the defendant removed the case into this court by writ of error.

It is stated in the brief of the district attorney that the third count of the indictment on which the defendant was convicted "was not drafted under section 3404, but under section 3397," of the Revised Statutes of the United States, and he relies upon that section to support the indictment and the judgment below. On the other hand, counsel for the defendant contends that the indictment does not charge an offense under section 3397, but must rest for its support on section 3404. The count charges that the defendant "unlawfully did purchase and receive for sale and have in his possession one thousand cigars on which the internal revenue tax of the United States then by law imposed upon cigars had not been paid." The only clause of section 3397 to which the count can be referred is the one inflicting a penalty on every person "who buys, receives, or has in his possession any cigars on which the tax to which they are liable has not been paid." Section 3404 reads as follows: "Every person who purchases or receives for sale any cigars which have not been branded or stamped according to law, shall be liable to a penalty of fifty dollars for each such offense." It will be observed that the count does not follow the language of either section. The acquisition of the cigars "for sale" is not essential to constitute the offense under section 3397; and, if the count is to be referred to the clause of this section we have quoted, the words "for sale" are surplusage, and all evidence of the sale of cigars was irrelevant. The count varies still more widely from the offense defined by section 3404, for under that section the offense consists in purchasing or receiving "for sale any cigars which have not been branded or stamped according to law." That the pleader did not intend to locate count 3 on this section is manifest from the fact that count 4, which was nol. pros'd, followed exactly the language of this

section, and charged that the defendant "did purchase and receive for sale one thousand cigars which had not been then and there branded and stamped as provided" by law. It is conceded that the judgment below cannot be supported if the count is to be referred to section 3404, for the penalty for violating that section is a fine of $50 only, whereas the court imposed a fine of $100, and 12 months' imprisonment. Upon the whole, we think the count charges an offense under section 3397, and that the words "for sale" must be treated as surplusage.

A brief reference to the testimony is essential to an intelligent understanding of the exceptions:

The testimony on behalf of the government tended to show: That the defendant, John Graham, and Charles James owned and ran a restaurant near the depot of the St. Louis, Iron Mountain & Southern Railway, at Poplar Bluff, Mo. That on the 2d of November, 1897, the witness West, a detective, went into this restaurant and asked for Mexican cigars, and a person behind the counter, whom he did not knew, handed him a box, partly filled, containing 22 Mexican cigars, which he bought. The box was taken from underneath the counter on which the cigar case rested. That later in the day he went into the eating house and asked for a Mexican cigar, and the defendant was then behind the counter, and sold him two cigars which he said were made in the Mexican republic. And that the box from which the cigars were taken had no United States internal revenue stamp on it. A special agent of the treasury department testified that he searched the restaurant and found under the counter two boxes containing Mexican cigars,—one containing 20, and the other a less number,— and that he also searched the lodging apartment occupied by the defendant, James, and Graham, and found in Graham's trunk a box partly filled with Mexican cigars, and a box containing one large cigar, and that the United States internal revenue stamp was not on any of the boxes.

On behalf of the defendant it was shown by the testimony of the special agent of the treasury department, and the regulations of the treasury department, that passengers and travelers coming from Mexico into the United States were permitted to retain 50 cigars without payment of duty. The following is a copy of the regulations:

"(6841)—Free Entry—Cigars in Passenger's Baggage.

"Treasury Department, April 3rd, 1885.

"Sir: I am in receipt of your letter of the 30th ulto., requesting to be informed as to what quantity of cigars found in a passenger's baggage shall be delivered free of duty. It is decided, in accordance with your recommendation, that any cigars in excess of fifty in the baggage of any one passenger shall be subject to duties, as the case may require. Please give instructions accordingly.

"Very respectfully,                           C. S. Fairchild, Acting Sec'y.
"Collector of Customs, New York."

"(9119)—Synopsis of Decisions Treasury Department, 1888—Free Entry— Cigars in Passenger's Baggage at Ports on the Frontier.

"Treasury Department, November 17th, 1888.

"Sir: The department is in receipt of your letter of the 30th ulto., reporting in the matter of the complaint of Louis J. Wortham, special inspector, that

there is too much liberty at the subport of Laredo in the admission free of duty of single boxes of cigars imported from Mexico. It would appear from your report that your instructions to inspecting officers at the several crossings of the Rio Grande river and on the railroad tracks were founded upon department decisions of April 3rd, 1885, Synopsis 6841, and were to the effect that no resident of the Rio Grande Valley should be allowed to pass any cigars free, but that bona fide (passengers) and travelers should be permitted to retain fifty cigars without payment of duty. You state that you believe these orders have been strictly obeyed, but that notwithstanding the same a great many boxes of cigars are imported each month under the privilege aforesaid, and still larger number in the pockets of persons who cross and recross daily, and who bring from one-half to two dozen cigars in their pockets each trip. You desire to know whether you should search each man in order to stop this illegal traffic. In reply you are informed that sec. 3061, Rev. Statutes, gives ample authority to search any person on whom the custom's officers suspect there is merchandise subject to duty, or which has been introduced into the United States in any manner contrary to law. Respecting the importation of cigars, the department does not deem it expedient at this time to modify Synopsis 6841, except that the privilege thereby extended to travelers and passengers should be restricted to bona fide passengers and travelers passing through the frontier towns say once, or at the most twice, a year, and that persons residing at or near the frontier should not be considered as (passengers) or travelers, within the meaning of the decisions cited.

"Respectfully, yours,          I. H. Maynard, Assistant Secretary.
"Collector of Customs, Corpus Christi, Texas."

The defendant testified that for several years prior to the transaction in question he had been, and was then, in the employ of the St. Louis, Iron Mountain & Southern Railway Company as baggage master, and that his stated run was between Texarkana, Ark., and Poplar Bluff, Mo.; that during his employment and runs he met many employés of the railroads, and that these men, in passing through Poplar Bluff, would come to the restaurant at Poplar Bluff owned by him, Graham, and James, out of money, and he would furnish them something to eat, and they would give him Mexican cigars; that he was in Poplar Bluff every third day, and on arriving there he would get his meals at the restaurant, and that he occupied for his private sleeping quarters the lodging room in connection with Graham and James; that he sometimes, when at the restaurant, sold cigars, but denied having sold the cigars in question to witness West; that he would find these railroad men in his baggage car, and they would give him Mexican cigars, as he had often befriended them, and that he came into possession of the broken boxes of cigars found beneath the counter by the revenue officer, and of the Mexican cigars found in the sleeping apartment, from railroad men who had been employed in Mexico on Mexican roads, and that these men told him they had given up their jobs in Mexico and were then returning to the United States, and that they had bought the cigars in Mexico for their own use; that when he took such cigars to the restaurant he instructed Graham and James not to sell them to anybody; that they were for his own use, and were put away under the counter, and that he did not have the cigars on hand for sale; and that he did not sell the two cigars to the witness West, and never sold any broken boxes of cigars to the witness for the government, or any one else. Charles James testified that he was a partner of the defendant in the restaurant, and that the defendant brought the broken boxes of cigars to the restaurant;

that he sometimes brought them in a satchel, and sometimes in his hands; that he instructed witness not to sell the cigars to any one; that the box containing the cigars found in his trunk in the private room by the revenue officer was brought there by the defendant, and by witness placed in his trunk; that these boxes of cigars found by the revenue officer had been there for some weeks; that he never sold any cigars to the witness West; and that he and his partner Graham were the only parties who ran the restaurant, but the defendant was a partner with them. John Graham testified that he was one of the partners of the defendant and James in the restaurant, and that he and James had sole charge of its business; that the defendant was not about the restaurant except when there taking his meals, when he would come in from his run; that he had seen the broken boxes of cigars under the counter; that they were there for some time; and that he never smoked them nor offered them for sale, nor did he sell any of them to the witness West. Witnesses testified to the good character of the defendant for honesty and veracity.

Based upon this testimony, the defendant asked the court to instruct the jury "that it is not a violation of the laws of the United States for a traveler coming from a foreign country into the United States to bring into the United States cigars in packages less than fifty, if such traveler brings such cigars into the United States for his personal use; and, if such traveler so brings such quantity of cigars into the United States, he may give the same away, and such donee may keep and retain such cigars without paying revenue taxes thereon, and he may give the same away without being so taxed." On the trial the government proved the cigars in question were Mexican cigars, and the defendant testified positively and without objection that they were given to him on his baggage car on the railroad by railroad men who had been working on Mexican roads, and who were returning from Mexico to the United States, and who said they purchased them in Mexico. In view of this testimony and the regulations of the treasury department, the instruction refused should have been given. The only matter of hearsay in the testimony was the fact that the parties said they had purchased the cigars in Mexico. The means by which they acquired the cigars in Mexico was not material, —whether by gift, purchase, or otherwise. The material fact was, did they, while traveling from Mexico to the United States, severally bring with them not exceeding 50 Mexican cigars, and were the cigars they gave the defendant the cigars, or part of the cigars, brought by them from Mexico? If so, they had a perfect right to give the cigars to the defendant or any other person, and their donee could smoke them himself or give them to others. Whether he could sell them, we need not decide, because, as we have seen, the charge of selling is irrelevant to the issue, under the particular clause of the statute upon which the count is based, and the government has elected to stand. It should have been left to the jury to say whether the cigars were brought from Mexico and acquired by the defendant under the circumstances claimed by him. If the facts were as claimed, he was not guilty. The grounds upon which the court refused to give the instruction were that "there was no evidence before the court that the parties from

whom the defendant claimed to have received the cigars had complied with the regulations of the internal revenue department, entitling them to pass the cigars free through the custom house on the line between Mexico and Texas, or that the custom-house officers at that place had passed them as free and not subject to duty or stamp under the regulations of the department"; but a traveler or passenger coming from Mexico to the United States is not required, by the regulations of the treasury department, to do anything, to entitle him to bring with him 50 Mexican cigars, or less. He may bring with him that number of cigars without the payment of any duty, and no notice is required to be taken of this number of cigars by the custom-house officers, any more than there is of the hat or shoes which the passenger or traveler is wearing. The court charged the jury to the contrary of the instruction prayed by the defendant; told the jury that if "the defendant received the cigars, if they were Mexican cigars, and unstamped with the revenue stamp of the United States, from other parties, and that he retained in his possession the said cigars for the length of time shown by the testimony of his own witnesses, then it was his duty to have put the required revenue stamp on the cigar boxes; and, as the evidence showed this had not been done, the jury should have no difficulty in reaching a verdict on this count of the indictment." From this instruction it is evident that the court's view of the law was that although the cigars might have been lawfully brought into the United States by passengers and travelers coming from Mexico, for their own use, in quantities less than 50, and therefore entitled to come in free of duty, nevertheless they were subject to the same internal revenue tax imposed on cigars made in this country, and that if they were in a box or boxes the required revenue stamp must be placed thereon, the same as if they had been domestic cigars. The court seems to have considered that the defendant's retention "in his possession of the cigars for the length of time shown by the testimony" imposed the duty on the defendant to have the boxes stamped; but, if the cigars had been brought from Mexico in the manner claimed, they were neither subject to duty nor to the internal revenue tax, and their retention for ever so long a time would not subject them to be taxed.

The instruction we have quoted was given after the jury had been considering of their verdict for 24 hours, and when they had come into the court room, on their own motion, for further instructions. After receiving this charge, the bill of exceptions recites:

"Thereupon the jury retired to consider of their verdict, and, having failed to agree, at 5 o'clock p. m. of that day the jury were called into the court room by the court, whereupon the court again explained to the jury the meaning of the charge preferred in the third count of the indictment, as above stated, and further said to the jury that the court could not understand how the jury could hesitate about a verdict under this count of the indictment, in view of the undisputed evidence in respect of the defendant having received and retained in his possession the cigars for a considerable length of time without having placed the required revenue stamp thereon; that, unless the jurors did their duty in obeying the law as declared to them by the court, the administration of justice must be a failure. The facts being clear and uncontradicted, and the law being explicit, the court did not understand how the jury could disagree in respect of this count of the indictment."

A fatal objection to this charge is that it is based on a partial view of the facts, and lays out of account the fact that these were Mexican cigars, and the manner in which the defendant claimed to have come into possession of them, and plainly tells the jury that it is their duty to find the defendant guilty if he "received and retained in his possession the cigars for a considerable length of time without having placed the required revenue stamp thereon." As has been shown, if the cigars were Mexican cigars, and the defendant came into the possession of them in the manner claimed by him, he was not required to place a revenue stamp on them.

It is further objected to this charge that it invaded the province of the jury. It was doubtless the court's erroneous view of the law applicable to the facts as they were claimed to exist by the defendant that induced it to ignore all consideration of those facts, and tell the jury, in substance, that it was their duty to find the defendant guilty. If the court's view of the law was correct, the defendant was obviously guilty, for he admitted he received and had the cigars in his possession; and this, in the view of the court, constituted the offense, and rendered him guilty, even though the cigars had been brought into the country from Mexico, and came into his possession in the manner claimed by him. We need not, therefore, inquire whether the judge invaded the province of the jury, and transgressed the well-settled rule on that subject, as to which see Starr v. U. S., 153 U. S. 614, 624, 14 Sup. Ct. 919, 38 L. Ed. 841.

It is recited in the bill of exceptions that:

"The defendant was brought to the bar of the court, and, being inquired of as to whether he had anything further to say why the sentence of judgment should not be pronounced upon him, answered in the negative; and the court called the defendant's counsel, who approached the bench, and the court inquired of counsel whether it was his purpose to prosecute this matter any further, and, understanding that it was not, the court stated that he would enter a fine of one hundred dollars against the defendant, and give him a jail sentence of six months. Thereupon counsel said that he intended to prosecute an appeal or writ of error to the appellate court on the case, and the court called the defendant up, who was still within the bar, and directed the clerk to enter a sentence of a fine of one hundred dollars on execution, and that the defendant be confined in the jail of Iron county, Missouri, for a term of twelve months."

Due exception was taken to this action of the court, and it is made the basis of two contentions: First, that the court had no power, after once sentencing the defendant, to reconsider its action and impose another and more severe sentence; and, second, that the enhanced punishment imposed on the defendant by the second sentence was inflicted on him as a punishment for declaring his purpose to appeal the case to a higher court. The extent of the punishment to be inflicted on the defendant, within the limit prescribed by the statute for the offense, rested in the sound judicial discretion of the court. The imposition of the first sentence did not put an end to the exercise of this discretion. The first sentence was not recorded. The defendant had not yet left the bar, and had not satisfied or suffered any part of the punishment thereunder, when it was set aside and the second sentence imposed. Under these conditions, it was competent for the court to reconsider its sentence and impose a different

one. Ex parte Lange, 18 Wall. 163, 174, 191, 21 L. Ed. 872. The bill of exceptions does not show that the first sentence was set aside, and the second imposed, doubling the period of imprisonment, because the defendant had declared his intention of appealing the case. A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant. It would be the infliction of a penalty for the exercise of a clear legal right, and would call for the severest censure. But no such motive can be imputed to the court below. This court is bound to presume that the lower court, in recalling its first and imposing a second and more severe sentence, did so from right and proper motives, and for the purpose of imposing a punishment which, upon reflection, it deemed better suited to the offense.

The judgment of the district court is reversed, and the case remanded, with instructions to grant a new trial.