**ROWLEY v. WELCH.**

No. 7572.

United States Court of Appeals for the
District of Columbia.

Decided July 22, 1940.

Josiah Lyman and Kathryn M. Schwarz,
both of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., and Arthur B. Caldwell, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before STEPHENS, MILLER, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The question, briefly stated, is whether the District Court has power to amend sentences for crime inadvertently pronounced to run concurrently so as to make them consecutive, when the amendment is made before the prisoner is removed from the courthouse on the occasion when sentence is pronounced. The appeal is from an order discharging a writ of habeas corpus and remanding appellant to appellee's custody to serve out the remainder of the second sentence. We find no error in the court's action.

Appellant was indicted in two separate indictments on two different charges of procuring miscarriage (abortion).[1] He pleaded guilty on May 3, 1938, to both charges. The surety on his bail bond then surrendered him into the court's custody, and the trial justice, now deceased, sentenced him first to serve "one year to eighteen months on each of the two indictments, said two sentences to run at the same time and concurrently with each other, these sentences to be served in an institution of a penitentiary type, to be designated by the Attorney General of the United States." The Attorney General designated the District of Columbia Reformatory at Lorton, Va., as the place of confinement. Immediately upon pronouncement of sentence the deputy marshal took appellant to the elevator leading from a small vestibule of the courtroom to the floor below, where there were cell rooms for the temporary detention of prisoners. He was not taken to the cell room, but remained in the elevator for a short time, conceded to be not more than half an hour, when he was returned to the courtroom and the court addressed him as follows: "I made a mistake in the Rowley case. I intended to say consecutively. Change that [sentence] to consecutively."

Thereupon appellant was taken again to the elevator, then to the cell room below, and thence on the same day to the District jail. Thereafter he was transferred from the jail to the Lorton Reformatory, where,

on July 18, 1939 (with allowance of time for good behavior), he completed the period of time equal to the concurrent sentences described in the judge's first oral utterance, having taken no further action in the case. On September 1, 1939, he filed below his petition for a writ of habeas corpus directed to appellee as respondent. The petition set forth the facts stated above and claimed that appellant's detention after the expiration of the first sentence was illegal. The Government's return and answer, admitting the facts stated in the petition, maintained that they are insufficient in law to justify granting the relief sought. After hearing before another justice than the one who pronounced and amended the sentences, the court made findings of fact substantially as we have set them forth and conclusions of law, dismissed the petition, discharged the writ and remanded appellant to appellee's custody to serve out the remainder of the second of the consecutive sentences.

The court found, as matter of fact, that at the time of pronouncing sentence originally the trial justice intended to make the sentences run consecutively and that his statement that they were to run concurrently was a slip of the tongue and not an expression of his real intention. There is evidence of record, both in the court's language correcting the original pronouncement and in the promptness with which the correction was made, which sustains this finding, and we find none to contradict it apart from the mere fact that the sentences originally were spoken to run "at the same time and concurrently with each other." We cannot say, as matter of law, that the form of language employed could not have been used inadvertently, and therefore that the evidence could not support the finding. It therefore was not arbitrary, and we must regard the original sentences as stated inadvertently to run concurrently, not intentionally so. Consequently we are not required to decide whether a court having once pronounced sentence in accordance with its true intent and purpose can change it later in such manner as to increase the penalty,[2] whether before or after service of the sentence begins. The question is whether such a change can be made, if done promptly, in order to correct a sentence inadvertently pronounced and make it speak the true intention of the court.

[1] D.C.Code (1929) tit. 6, § 33, 31 Stat. 1322 (1901).

[2] Cf. note 3 infra.

Appellant's principal contention is that this cannot be done because, according to his view, he had begun to serve the sentences before the correction was made and therefore, since it increased the penalty, the amendment placed him twice in jeopardy for the same (the second) offense. It is conceded that if appellant had begun to serve the sentences as originally pronounced, it was beyond the court's power to make the amendment.[3] Appellant asserts that the elevator was a "place of detention" within the meaning of Section 709a, Title 18, United States Code, 18 U.S.C.A. § 709a.[4] Therefore he says that when he was led out of the courtroom through the vestibule, placed in the elevator and detained there, for however short an interval, the service of the sentences had begun. He urges also that the original sentences began to run immediately and irrevocably at the moment the words imposing them fell from the judge's lips.

It is conceded that pronouncement of sentence constitutes a judgment of the court[5] and that, as in civil cases, the court retains jurisdiction of the cause, during the remainder of the term at least,[6] to make corrections in its judgment in proper cases.[7] But it is said that this power ends with the beginning of service of a valid sentence,[8] even within the same term, to the extent that the Fifth Amendment prohibits change which will increase the penalty,[9] though jurisdiction may continue during the term to make other changes or corrections. The first question therefore is whether appellant had entered upon the service of the sentence prior to the time when the amendment was made.

So far as Section 709a may have bearing on the question, it is clear that the elevator was not a "place of detention" within the meaning of the section. It provides that the sentence "shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: *Provided,* That if any such person shall be committed to *a jail or other place of detention* to

---

[3] It is settled law that the court cannot increase a sentence after defendant has begun to serve it. Ex parte Lange, U.S.1874, 18 Wall. 163, 21 L.Ed. 872; Commonwealth v. Weymouth, Mass. 1861, 2 Allen 144, 79 Am.Dec. 776; Commonwealth v. Foster, 1877, 122 Mass. 317, 23 Am.Rep. 326; State v. Cannon, 1884, 11 Or. 312, 2 P. 191; cf. United States v. Benz, 1931, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354. Similarly after the prisoner has been convicted and has paid the fine imposed he may not later be sentenced to jail. Rupert v. State, 1913, 9 Okl.Cr. 226, 131 P. 713, 45 L.R. A.,N.S., 60. This is based upon the principle that a man may not be punished twice for the same offense. Ex parte Lange, supra. In these cases loss of jurisdiction occurred when the prisoner was committed to the jail, prison or penitentiary and began service of the sentence there, or, as in the Rupert case, when the sentence was fully executed. Compare the following cases in which the trial courts were held to have lost jurisdiction for other purposes upon commitment and commencement of service. United States v. Murray, 1928, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309; Miller v. Snook, D.C.N.D.Ga.1926, 15 F.2d 68; United States v. Albrecht, 7 Cir., 1928, 25 F.2d 93; In re Sullivan, 1906, 3 Cal. App. 193, 84 P. 781. See also People v. Duffy, N.Y.1849, 5 Barb. 205. It has been held that a prisoner may not be retried after serving part of his sentence even though the original indictment or information under which he was convicted was voidable. Commonwealth v. Goddard, 1816, 13 Mass. 455; Commonwealth v. Loud, Mass.1841, 3 Metc. 328, 37 Am. Dec. 139; Davis v. State, 1897, 37 Tex. Cr. 359, 38 S.W. 616, 39 S.W. 937; cf. State v. Snyder, 1889, 98 Mo. 555, 12 S.W. 369. It has been held otherwise where the original conviction was void. United States v. Jones, C.C.S.D.Ga.1887, 31 F. 725.

[4] 47 Stat. 381 (1932).

[5] Ex parte Lange, U.S.1874, 18 Wall. 163, 21 L.Ed. 872; United States v. Benz, 1931, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354; Simmons v. United States, 5 Cir., 1937, 89 F.2d 591.

[6] United States v. Benz, 1931, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354; cf. United States v. Murray, 1928, 275 U. S. 347, 48 S.Ct. 146, 72 L.Ed. 309.

[7] United States v. Benz, 1931, 282 U. S. 304, 51 S.Ct. 113, 75 L.Ed. 354; Bassett v. United States, U.S.1870, 9 Wall. 38, 19 L.Ed. 548; Nichols v. United States, 8 Cir., 1901, 106 F. 672; Wall v. Aderhold, D.C.N.D.Ga.1931, 51 F.2d 714; DeMaggio v. Coxe, 2 Cir., 1934, 70 F.2d 840.

[8] Cf. King v. United States, 1938, 69 App.D.C. 10, 98 F.2d 291, holding to the contrary where the original sentence is invalid.

[9] Ex parte Lange, U.S.1874, 18 Wall. 163, 21 L.Ed. 872.

await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention." (Italics supplied) The section was intended primarily to regulate the calculation of the time during which the prisoner should be detained. Whether or not its purpose was also in part to affect the power of the court to correct errors in its sentence or, if so, it is valid for such a purpose, it is clear that the section cannot aid appellant in the circumstances of this case because he has not shown that he is within its terms. Obviously the elevator was not a "penitentiary, reformatory, or jail for service of said sentence." Nor was it a "place of detention to await transportation" within the meaning of the proviso. It was a "place" or vehicle of transportation from the courtroom to a "place of detention." Congress was not splitting seconds, minutes or hours when it provided that the sentence should commence to run "from the date on which he is received at such jail or other place of detention." Nor was it making a jail out of the courtroom and its means of entrance and exit. What Congress had in mind, by adding the proviso, was to prevent what in practical effect would amount to an extension of the time of imprisonment by the prisoner's detention through no fault of his own in a place of temporary confinement while awaiting transportation to that specified for serving the sentence. It recognized that in some instances time would be required to make arrangements for the transportation of the prisoner to and his reception at the institution designated for serving the sentence, and that in such cases he should not be compelled to undergo confinement for a period longer than that specified in the sentence, as would be the case if it did not begin to run prior to his reception at the designated institution. In providing, therefore, for the sentence to commence to run from the date of reception at "a jail or other place of detention" while awaiting transportation, "other place of detention" must be taken to mean some place analogous to or which performs the ordinary function of a jail as at least a place of temporary incarceration. Con-

gress did not provide that the sentence should commence to run when the defendant is surrendered by his bail into the custody of the court or when the sentence is pronounced, or when he is led from the courtroom in an officer's custody, or when he enters the patrol wagon or walks down the street in custody toward the jail. It is not necessary for us to determine definitively what constitutes a "place of detention" within the statutory purpose. It is sufficient to hold, as we do, that the elevator was not such a place.[10] Accordingly, when appellant entered it and while he remained in it, he had not begun to serve his sentence within the meaning of Section 709a.

The question remains whether, apart from the statute and for purposes of attachment of jeopardy, there is merit in appellant's contention that the original sentences began to run at the very moment of utterance so that any change increasing the penalty was precluded. Appellant clothes the substance of this argument in two apparently distinct verbal garbs, namely, (1) as stated above, that the sentence began to run for the purpose here involved instantly when the court had spoken the words, and (2) that jeopardy of that sentence attached to his person at that instant so as to preclude subsequent increase of the penalty, whether or not the sentence had begun to run then for other purposes. Whether couched in terms of "commencement of sentence" or "attachment of jeopardy," the argument in its substance is merely that, when the words of sentence have fallen from the judge's lips, however inadvertently or unintentionally, the Fifth Amendment prohibits the court thereafter, even when it acts with the greatest promptness, from correcting or changing it by increasing it. No authority is cited to sustain so broad a view, but appellant seeks to apply an analogy between that jeopardy of conviction which attaches when a jury is sworn in the trial of a criminal case,[11] and jeopardy of a particular and defined penalty which is said to attach at the moment it is pronounced.

■ The Amendment is a protection against jeopardy of second punishment, not

---

[10] Cf. DeMaggio v. Coxe, 2 Cir., 1934, 70 F.2d 840, where an adjoining "detention room" was held not to be a "place of detention" within the meaning of this statute.

[11] Cf. Coleman v. Tennessee, 1879, 97 U.S. 509, 24 L.Ed. 1118; Kepner v. United States, 1904, 195 U.S. 100, 24 S. Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655; and authorities cited in 16 C.J. 236, §§ 363E, 364F.

merely against punishment for the second time.[12] It would seem therefore that once a sentence is validly and irrevocably made, it cannot thereafter be increased, regardless of whether service of the specified term of imprisonment has begun. There can be no question that the sentence cannot be increased after service has commenced.[13] But when it has not been begun (for other purposes, of course, than attachment of jeopardy), we find no authority which holds that under the Fifth Amendment jeopardy attaches finally and irrevocably at the instant of oral utterance of sentence, so as to preclude increasing it subsequently, regardless of the promptness with which the change is made and the causes which induce the court to make it. On the other hand, there is authority to the contrary.[14]

■■ Jeopardy exists when the court's action places the prisoner in irrevocable danger of execution of the sentence. If the mere oral pronouncement of the words of sentence is a final and irrevocable judgment taking unalterable effect instantaneously, by that act the prisoner is placed in danger of execution of the sentence and therefore in jeopardy. But this assumes that the oral utterance is final and unalterable, that it exhausts the court's power over its act of judgment. That certainly is not true, so far as some kinds of change are concerned.[15] The oral utterance is an act of judgment, but it is not an entirely unalterable one. Other events, as for example entry of the order of commitment, are required to give it absolute finality. Until they occur, the court retains jurisdiction and power, within recognized limits which need not be specified here, to make corrections, perhaps even other changes, which may be required by a right administration of justice. Entirely apart from specific constitutional limitations, therefore, there is nothing in the nature of mere oral pronouncement of sentence, judgmental in character though that act may be, which gives it absolutely unalterable quality.

Nor do we think the Fifth Amendment gives it such consummate finality that the court is precluded from correcting an inadvertent pronouncement, even by increasing the penalty, provided the change is made as promptly as was done in this case. Appellant's view, carried to its logical extreme, would prevent a correction of mere inadvertence at any time after it occurs, even in the next breath. So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable. The sounder view would be that the lapse would vitiate the sentence, with the consequence that it would be void and no bar to a later and deliberate pronouncement of judgment, within the rule of King v. United States, 1938, 69 App.D.C. 10, 98 F. 2d 291. It was not the purpose of the Amendment to compel courts to give effect to their inattentive and nondeliberative acts, so long at least as their actual execution has not been initiated and the prisoner has not been harmed by them other than in hearing the pronouncement made and promptly corrected. Other and more substantial evils were within its purview. We need not catalogue them. Neither need we extend the technical conception of jeopardy from the point at which the Amendment is a protection against them to one at which it becomes both an instrument for making the act of judgment a nondeliberative act and a loophole, if not a breach, for the es-

---

[12] "The Constitution of the United States, in the Fifth Amendment, declares, 'nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb.' The prohibition is not [merely?] against being twice punished, but against being twice put in jeopardy." United States v. Ball, 1896, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L. Ed. 300. (Brackets supplied)

[13] Cf. note 3 supra.

[14] Where the prisoner has not yet left the bar after pronouncement of sentence, it has been held that the sentence may be increased. Nichols v. United States, 8 Cir., 1901, 106 F. 672, in which, apparently, there was no element of inadvertence or mistake in the original pronouncement. And in DeMaggio v. Coxe, 2 Cir., 1934, 70 F.2d 840, it was held that defendant could be recalled from a detention room adjoining the courtroom where he was taken after sentence and could be resentenced to a longer term.

[15] Cf. note 7 supra and text. See also note 3 supra.

cape of convicted persons from merited punishment. The Amendment contemplates the protection of two interests. It looks of course to the protection of the person charged with crime. But it does not require this at the cost of ignoring entirely the interest of the community in protection from criminal activities.[16] The former should not be whittled away by judicial decisions which permit substantial invasions of the rights to be punished only once for a single offense and to be free from substantial jeopardy of second punishment for it. Neither should the latter be whittled down by making of the conception of jeopardy a highly technical idea unrelated to the substance, immediacy and inescapability of the threat of double punishment.

Accordingly, we find the alleged analogy to jeopardy of conviction from the swearing of a jury unconvincing. As shown by the division in the court and the reasons assigned in the dissenting opinions, the decision in Kepner v. United States, 1904, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655, carried the conception of jeopardy to the verge of permissible protection, as the court itself later indicated.[17] Without questioning that decision, even in the light of contrary results in state courts which the Supreme Court has sustained,[18] we are unwilling to extend the conception further than is required by the Kepner case, as appellant asks us to do. Requiring a defendant who has been once acquitted of crime, though erroneously, to stand trial for it a second time on reversal of the judgment, not only returns him from the status of one acquitted to that of possible conviction, but subjects him to the expense and other burdens incident to another trial. These consequences do not adhere to the mere correction, promptly made, of a sentence inadvertently uttered.

We need not determine the exact point in time which fixes the ultimate limit to the court's power to make the correction. Appellant's view, logically extended, would prevent it at any time after the inadvertence occurs, whether a moment later, or while the prisoner remains at the bar, or in the courtroom or within the court's custody elsewhere on the courthouse premises. It has been suggested that the limit is reached when the prisoner passes from judicial custody for purposes of trial and sentence into executive custody for execution of sentence or possibly detention preliminary to it.[19] However that may be and whatever the precise moment at which such a transfer occurs, we think the appellant in the facts shown here clearly remained at all times in the custody of the court and his person had not passed into executive custody. He was in the courthouse, immediately adjacent to the courtroom if not, practically speaking, within it, under constraint which was exercised by officials of the court and therefore of the court itself, awaiting delivery to executive custodians. In Nichols v. United States, 8 Cir., 1901, 106 F. 672, the prisoner had not left the bar after pronouncement of sentence, when the court imposed a heavier one. In DeMaggio v. Coxe, 2 Cir., 1934, 70 F.2d 840, the facts were substantially identical with those presented here. We think therefore, both upon principle and upon available authority, that the court did not exceed or abuse its power.

■ We find no merit in other contentions of appellant, including the suggestion that correction of the sentence constituted cruel and unusual punishment. It may be

[16] Cf. Holmes, J., dissenting in Kepner v. United States: "At the present time in this country there is more danger that criminals will escape justice than that they will be subjected to tyranny." 195 U.S. at 134, 24 S.Ct. page 806, 49 L. Ed. 114 1 Ann.Cas. 655.

[17] "The subject was much considered in Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655, decided in 1904 by a closely divided court. The view was there expressed by a majority of the court that the prohibition was not confined to jeopardy in a new and independent case. It forbade jeopardy in the same case if the new trial was at the instance of the government and not upon defendant's motion.

Cf. Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292, 4 Ann. Cas. 773. All this may be assumed for the purpose of the case at hand, though the dissenting opinions * * * show how much was to be said in favor of a different ruling." Cardozo, J., in Palko v. Connecticut, 1937, 302 U.S. 319, 322, 323, 58 S.Ct. 149, 150, 82 L.Ed. 288.

[18] Palko v. Connecticut, 1937, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

[19] Cisson v. United States, 4 Cir., 1930, 37 F.2d 330, 332; cf. Miller v. Snook, D. C.N.D.Ga.1926, 15 F.2d 68; Trant v. United States, 7 Cir., 1937, 90 F.2d 718; Demarois v. Hudspeth, 10 Cir., 1938, 99 F.2d 274.

noted, though we have taken no account of it, that appellant took no appeal from the corrected sentence, although he was fully aware of the change when it occurred and the consequence it involved for his interest. We need not decide whether under these circumstances he would be precluded from relief by habeas corpus, were there greater merit in his substantive contentions.[20]

It should be unnecessary to emphasize that our decision is limited specifically to the facts presented by the case, namely, the prompt correction of an inadvertently pronounced sentence, made while the prisoner remains directly in the custody of the court and on the premises of the courthouse at or immediately following the occasion of original utterance of sentence. Beyond that we need not, and do not, go.

The order is affirmed.

---

[20] Cf. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Woolsey v. Best, 1936, 299 U.S. 1, 57 S. Ct. 2, 81 L.Ed. 3; Stevens v. McClaugh- ry, 8 Cir., 1913, 207 F. 18, 51 L.R.A.,N. S., 390; Van Gorder v. Johnston, 9 Cir., 1937, 87 F.2d 654.