**David MAHER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 99-87.**

Supreme Court of Wyoming.

Dec. 7, 1999.

Representing Appellant: Tom Sedar, Casper, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and T. Alan Elrod, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant David Maher appeals from his sentence which the district court entered after correcting itself approximately twenty-

five minutes after pronouncing the original sentence.

We affirm.

## ISSUES

■ Maher offers a single issue for our consideration:

Whether the district court judge violated the appellant's constitutional right against double jeopardy when he increased [the] appellant's sentence by improperly changing the sentence from running concurrently to running consecutive[ly]?

## FACTS

Maher pleaded guilty to one count of indecent liberties and no contest to three counts of indecent liberties pursuant to a plea agreement. At the sentencing hearing, the district court stated that Maher's crimes were "heinous acts" and that "the impact on the victims [was] obvious." The district court also explained that "[p]art of the function of the Court is to ensure that other victims do not come before the Court having experienced the same emotional and physical trauma. And to the extent that that can be established with the deterrent of sentencing, it ought to be—it ought to be done." The district court sentenced Maher to serve four concurrent terms of not less than five years nor more than eight years in the Wyoming State Penitentiary. The district court remanded Maher to the custody of the sheriff for transportation to the state penitentiary.

Approximately twenty-five minutes later, the district court reconvened, and the judge informed all present that he misspoke when he imposed concurrent sentences. He explained that he had intended for the sentences to be served consecutively, and he corrected the sentence to reflect consecutive terms:

And at the time I imposed sentence, it was my intent to impose on each count, a sentence of not less than five nor more than eight years in the state penitentiary to run consecutively to each other. And it is my understanding that on the record I said concurrent with each other.

I am not reviewing the sentence. I misspoke myself at the time of sentencing, and the sentence which I am imposing on each of the counts—and those are the same counts that I listed at the time of sentencing—is that this should be a sentence in the state penitentiary of not less than five years nor more than eight years. And those are to run consecutively to each other.

I am just correcting the record as to the sentencing that I intended to impose at the time of sentencing.

The district court then entered a Judgment and Sentence which reflected the consecutive terms. Maher appeals from this Judgment and Sentence.

## DISCUSSION

Maher contends that the district court violated his constitutional right against double jeopardy when it increased his sentence by changing it to consecutive terms. The state counters that Maher was not placed twice in jeopardy because the correction was made before he began serving his sentence.

■ The double jeopardy clause of the Fifth Amendment to the United States Constitution prevents a court from increasing a sentence, which is in all respects legal, after a defendant has begun serving it. *Kaess v. State,* 748 P.2d 698, 702 (Wyo.1987); *Turner v. State,* 624 P.2d 774, 775–76 (Wyo.1981). The relevant inquiry in deciding whether a defendant has begun serving his sentence is whether he has been delivered to executive custody for that purpose. *Green v. United States,* 363 A.2d 979, 981 (D.C.1976).

In making our decision, we rely on two cases: *Rowley v. Welch,* 114 F.2d 499 (D.C.Cir.1940), and *Green,* 363 A.2d 979. In *Rowley,* the appellant was sentenced to serve two concurrent terms. 114 F.2d at 500. Following the pronouncement of the sentence, the deputy marshal took the appellant to the elevator to go to the floor below the courtroom where there were some temporary holding cells. The appellant was not placed in any of the cells but instead remained on the elevator for not more than half an hour before he was returned to the courtroom.

*Id.* The judge informed the appellant that he made a mistake and that he had intended to say "consecutively." *Id. Green* possessed similar facts wherein the trial court sentenced the appellant to serve three to six years for his crime. 363 A.2d at 980. While the appellant was still in the courthouse, the judge realized that he had mistakenly said three to six years rather than what he actually intended to say, which was three to nine years. *Id.* The decisions to affirm the corrections in these two cases focus on the fact that the trial courts corrected their errors promptly and before the appellants had been transferred to the facilities where they had been ordered to serve their sentences.

When faced with the argument that the Fifth Amendment prohibits any correction or changing once the words of sentence have fallen from the judge's lips, however inadvertently or unintentionally, the *Rowley* court responded:

> There can be no question that the sentence cannot be increased after service has commenced. But when it has not been begun (for other purposes, of course, than attachment of jeopardy), we find no authority which holds that under the Fifth Amendment jeopardy attaches finally and irrevocably at the instant of oral utterance of sentence, so as to preclude increasing it subsequently, regardless of the promptness with which the change is made and the causes which induce the court to make it. On the other hand, there is authority to the contrary.
>
> . . . .
>
> Nor do we think the Fifth Amendment gives it such consummate finality that the court is precluded from correcting an inadvertent pronouncement, even by increasing the penalty, provided the change is made as promptly as was done in this case. Appellant's view, carried to its logical extreme, would prevent a correction of mere inadvertence at any time after it occurs, even in the next breath. So construed, the Amendment would embalm into constitutional right an act of pure inadvertence, although every consideration of justice and its proper administration requires that this most solemn judicial step be taken with no

taint of accident or inattention, but with the utmost deliberation and presence of mind. Courts, being human, cannot avoid occasional lapses characteristic of humanity, nor can the Constitution prevent them. It can only guard against their consequences. But it would not do so by perpetuating or making them inescapable. The sounder view would be that the lapse would vitiate the sentence, with the consequence that it would be void and no bar to a later and deliberate pronouncement of judgment, within the rule of *King v. United States,* 1938, 69 App.D.C. 10, 98 F.2d 291. It was not the purpose of the Amendment to compel courts to give effect to their inattentive and nondeliberative acts, so long at least as their actual execution has not been initiated and the prisoner has not been harmed by them other than in hearing the pronouncement made and promptly corrected. Other and more substantial evils were within its purview. We need not catalogue them. Neither need we extend the technical conception of jeopardy from the point at which the Amendment is a protection against them to one at which it becomes both an instrument for making the act of judgment a nondeliberative act and a loophole, if not a breach, for the escape of convicted persons from merited punishment.

114 F.2d at 503–04 (footnotes omitted). We find this rationale to be sound and, therefore, apply it to the case at bar.

Although we do not need to decide the exact moment when the district court's power to correct its original sentence becomes limited, it has been suggested that it occurs when the defendant passes from "judicial custody for purposes of trial and sentence into executive custody for execution of sentence." 114 F.2d at 504; *see also Borum v. United States,* 409 F.2d 433, 441 n. 36 (D.C.Cir.1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969) (which distinguishes between the temporary custody of the judiciary which is exercised while in the courthouse and the actual confinement in a designated penitentiary for the purpose of serving a judicially imposed sentence); *Green,* 363 A.2d at 981. Whatever that de-

termination ultimately is, we are convinced that, in this case, Maher remained in the custody of the court and had not yet passed into executive custody at the time his sentence was corrected. We conclude that the district court promptly, and before Maher was passed into executive custody, corrected the sentence. We, therefore, affirm the sentence which orders consecutive prison terms.