IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0024-04



 


THE STATE OF TEXAS



v.





 ANGEL AGUILERA, Appellee





ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY





 Cochran, J., filed a concurring opinion, in which Price, J. joined.


O P I N I O N 



 I join the majority opinion. I write separately to emphasize several points: (1) the
majority is not overruling Williams v. State (1) or Powell v. State; (2) (2) this is a "sauce for goose
is sauce for gander" rule which protects both defendants and society-at-large from a trial
judge's accidental misstatements or momentary mistakes; and (3) the State did not appeal the
issue of whether the trial court's re-sentencing, if it was based upon a statutorily prohibited
consideration of the victim impact statement, was illegal; therefore, we cannot address that
issue.

A. The majority opinion clarifies, but does not overrule, Williams and Powell on the
question of when a sentence commences.


 In both Williams and Powell, this Court held that a trial court does not have the power
to alter or modify a defendant's sentence once the defendant has begun to serve his sentence. (3) 
Indeed, the Double Jeopardy Clause of the United States Constitution forbids any increase
in a defendant's sentence once that sentence has been served or "executed." (4) However, in
Powell, this Court expressly stated:

 It seems to be well established by the authorities in other states that a court has
power to revise, correct or vacate a sentence imposed during the term of the
court in which the conviction was had and before the original sentence has
gone into operation or action is had under it. (5)


The issue in this case, then, is when does a sentence go into operation? Article 42.09, section
1, of the Code of Criminal Procedure states that "[t]he defendant's sentence begins to run on
the day it is pronounced ...." The State argues that, in fact, it begins to run "the moment that
it is orally pronounced and that sentencing has concluded." (6) This rule has the advantage of
being a very bright line, but it fails in flexibility. Judges and parties occasionally make
mistakes or misstatements in speaking. Such mistakes ought not be cast in stone. (7) "The
Constitution does not require that sentencing should be a game in which a wrong move by
the judge means immunity for the prisoner." (8) Similarly, the rule fails to allow for a sudden
change of heart if made swiftly enough. 

 Both federal and state jurisdictions, recognizing the inequitable harshness of such an
inflexible rule, have held that a trial court may modify or alter its sentence-up or down-with
"reasonable promptness" as long as the defendant has not actually begun to serve his
sentence. (9) The virtue of the majority's default rule-a defendant's sentence begins at the
adjournment of court on the day that it is pronounced-avoids the ticklish technicalities of
deciding whether the defendant may be returned to the bench after the trial court has orally
remanded him to the custody of the sheriff, (10) returned him from a hold-over cell (11) or the
elevator, (12) and so forth. Of course, if the evidence affirmatively and clearly shows that the
defendant had begun serving his sentence before adjournment of court on the day of
sentencing, (13) then the trial court cannot modify or alter his original sentence under Williams
or Powell. (14)

B. The Court's rule permits a trial judge to alter or modify his sentence either up
or down if the defendant has not yet begun to serve the original sentence.


 Although the Court does not expressly say so, the rule set out in the majority opinion
sets the finality of the sentencing process for both upward and downward alterations. A good
rule generally works both ways. If a trial judge has authority to decrease a sentence before
the defendant begins to serve that sentence-as the majority correctly holds-then surely he has
equal authority to increase it if double jeopardy is no bar. As noted in the cases cited in Part
A, double jeopardy is no bar. (15)

 The majority holds that "a trial court also retains plenary power to modify its sentence
if, as in this case, the modification is made on the same day as the assessment of the initial
sentence and before the court adjourns for the day." That is, the trial court may modify its
sentence either up or down on the day of sentencing as long as the defendant has not yet
begun to serve his sentence. 


 The State did not appeal the propriety of a trial court altering its sentence after
hearing the victim's statement.



 The trial judge changed her sentence from twenty-five years to fifteen years after
hearing the victim's statement about the crime. I certainly agree with the dissent that this is
"an additional problem with this case which warrants mentioning." (16) It deserves nothing
more than a mere mention, however, because the State did not appeal on this basis. The State
raised a single point of error in the court of appeals:

 A trial court has no authority to "resentence" a defendant when the first
sentence is within the statutory range and the defendant has begun serving the
sentence, and any purported resentence is void and appealable by the State as
being a sentence that is illegal. When the trial court here sentenced Aguilera
to a valid sentence within the statutory range of punishment of 25 years'
confinement and remanded him to custody, but within minutes, with the only
intervening court event being the victim's post-sentencing statement,
resentenced Aguilera to a lower punishment of 15 years' confinement, wasn't
such purported resentencing void and appealable by the State as being a
sentence that was illegal?


Because the State did not bring a point of error to the court of appeals addressing the
purported illegal basis for the re-sentencing, we cannot address that question ourselves nor
remand to the court of appeals to address an issue that was never directly presented to it. (17)

 With these comments, I join the majority opinion.


Cochran, J.

Filed: June 22, 2005

Publish


1. 145 Tex. Crim. 536, 542, 170 S.W.2d 482, 486 (1943) ("when the accused has accepted
the judgment and has performed a part thereof, or has suffered some punishment as a result
thereof, in which event the court is powerless to change the judgment in any substantial
respect").
2. 124 Tex. Crim. 513, 515-16, 63 S.W.2d 712, 713 (1933) (trial court does not have
power to stack sentences after appellant had served several months of sentence which had been
ordered to run concurrently with another sentence). 
3. Williams, 145 Tex. Crim. at 542, 170 S.W.2d at 486; Powell, 124 Tex. Crim. at 515-16,
63 S.W.2d at 713; see also Ex parte Reynolds, 462 S.W.2d 605, 608 (Tex. Crim. App. 1970)
(holding that "it was beyond the power of the court ... to add a cumulation order onto the last
sentence imposed after the petitioner had suffered punishment under the sentence originally
imposed"); Ex parte Brown, 477 S.W.2d 552, 554 (Tex. Crim. App. 1972) (trial court's re-sentencing order making sentences cumulative entered after defendant had been imprisoned for
two months was invalid; "[s]uch a belated attempt at altering the terms of a defendant's sentence
[is] null and void of effect"); Blackwell v. State, 510 S.W.2d 952, 956 (Tex. Crim. App. 1974).
4. Ex parte Lange, 18 Wall. 163, 175-6, 85 U.S. 163, 174 (1874) (double jeopardy protects
against any increase in punishment for the same crime once the defendant has served his sentence
or a portion thereof or otherwise suffered punishment; when statute set punishment at either a
fine or imprisonment and defendant had already paid fine, trial court was without power to
modify, five days later, original sentence of both a fine and imprisonment to delete the fine and
require the imprisonment). In Lange, the Supreme Court expressly noted that the trial court did
have constitutional authority to modify or alter the sentence upwards as long as that sentence had
not yet been "executed." Id. at 174. See also Ex Parte Barley, 842 S.W.2d 694, 695 (Tex. Crim.
App. 1992) (a cumulation order entered after a defendant has commenced serving his sentence
violates double jeopardy provisions); see generally, Lee R. Russ, Power of State Court, During
Same Term, to Increase Severity of Lawful Sentence-Modern Status, 26 A.L.R.4th 905 at [3]
(1983 & 2005 Supp.) ("Russ").
5. 124 Tex. Crim. at 515, 63 S.W.2d at 713.
6. The State relies, in part, on Ex parte Madding, 70 S.W.3d 131, 135 (Tex. Crim. App.
2002), in which this Court stated that

 the imposition of sentence is the crucial moment when all of the parties are
physically present at the sentencing hearing and able to hear and respond to the
imposition of sentence. Once he leaves the courtroom, the defendant begins
serving the sentence imposed. 

Id. An important aspect in Madding, however, was that the defendant was never brought back
into open court, much less on the same day as the original sentencing, before the written
judgment was modified outside his presence and without his knowledge. Id. at 136 ("Once
applicant was removed from the courtroom and began serving his sentence, it was too late to
cumulate the sentence just imposed with an earlier one. A trial court does not have the statutory
authority or discretion to orally pronounce one sentence in front of the defendant, but enter a
different sentence in his written judgment, outside the defendant's presence"). To the extent that
Madding could be construed as suggesting that the second the courtroom door closes upon the
sentenced person's back, that person has begun serving his sentence, and that sentence is forever
cast in stone regardless of how speedily the defendant is returned to open court, the majority's
opinion today clarifies Madding.
7. See Rowley v. Welch, 72 App. D.C. 351, 114 F.2d 499 (1940). In rejecting the argument
that the Double Jeopardy Clause prohibits any correction, alteration, or change once the words
pronouncing sentence have fallen from a judge's lips, the court of appeals stated: 

 If the mere oral pronouncement of the words of sentence is a final and irrevocable
judgment taking unalterable effect instantaneously, by that act the prisoner is
placed in danger of execution of the sentence and therefore in jeopardy. But this
assumes that the oral utterance is final and unalterable, that it exhausts the court's
power over its act of judgment. That certainly is not true, so far as some kinds of
change are concerned. The oral utterance is an act of judgment, but it is not an
entirely unalterable one. Other events, as for example entry of the order of
commitment, are required to give it absolute finality. Until they occur, the court
retains jurisdiction and power, within recognized limits which need not be
specified here, to make corrections, perhaps even other changes, which may be
required by a right administration of justice. Entirely apart from specific
constitutional limitations, therefore, there is nothing in the nature of mere oral
pronouncement of sentence, judgmental in character though that act may be,
which gives it absolutely unalterable quality.

 ... Appellant's view, carried to its logical extreme, would prevent a
correction of mere inadvertence at any time after it occurs, even in the next breath.
So construed, the Amendment would embalm into constitutional right an act of
pure inadvertence, although every consideration of justice and its proper
administration requires that this most solemn judicial step be taken with no taint
of accident or inattention, but with the utmost deliberation and presence of mind.
Courts, being human, cannot avoid occasional lapses characteristic of humanity,
nor can the Constitution prevent them. It can only guard against their
consequences. But it would not do so by perpetuating or making them
inescapable. 

Id. at 503 (footnote omitted).
8. Bozza v. United States, 330 U.S. 160, 166-167 (1947) (holding that five-hour interim
between first and second sentencing did not violate double jeopardy although defendant was
taken first to the U.S. Marshal's office and then to a local federal detention jail awaiting
transportation to the penitentiary where he was finally to be confined; trial judge had forgotten to
impose mandatory fine); compare State v. Dickerson, 864 S.W.2d 761, 763 (Tex. App. -
Houston [1st Dist.] 1993, no pet.) (holding that trial court did not have authority to correct
mistake in failing to sentence defendant as habitual offender when less than a minute elapsed
from time of imposing first sentence of two years to imposing intended sentence of twenty-five
years even though it was clear that the "trial court meant to find the enhancement paragraphs
true"); Tooke v. State, 642 S.W.2d 514, 518 (Tex. App. - Houston [14th Dist.] 1982, no pet.)
(trial court, which immediately realized that it had mistakenly omitted consideration of
enhancement paragraph in pronouncing sentence, could not correct mistake and re-sentence
defendant in same proceeding). Of course, neither Dickerson nor Tooke survive the majority's
holding today.
9. See Russ, 26 A.L.R.4th at [4]; see also United States v. DiFrancesco, 449 U.S. 117, 134
(1980) (noting that "the established practice in the federal courts [is] that the sentencing judge
may recall the defendant and increase his sentence, at least (and we venture no comment as to
this limitation) so long as he has not begun to serve that sentence"); United States v. DiLorenzo,
429 F.2d 216, 221 (2d Cir. 1970) (because defendant was free on bail at the trial and had not yet
commenced to serve his sentence, trial judge had the power to promptly recall him and impose a
corrected sentence "a few hours later"); Green v. United States, 363 A.2d 979, 980 (Dist. Col.
App. 1976) (no double jeopardy violation when judge "misspoke" in originally sentencing
defendant to a term of 3 to 6 years, and there was a delay of less than one hour before orally re-sentencing defendant to sentence of 3 to 9 years when defendant was still in courthouse); Thomas
v. United States, 388 A.2d 1231, 1232-33 (Dist. Col. App. 1978) (7 hour delay between
imposition of original sentence and increased sentence was reasonably prompt when defendant
had spent interval in detention cell awaiting transfer to jail; trial court explained that he wanted to
correct a sentence he never intended to impose).
10. Maher v. State, 991 P.2d 1248, 1250-51 (Wyo. 1999) (although trial judge had
completed sentencing and ordered defendant remanded to custody of sheriff, defendant had not
left courtroom; trial judge could reconvene court 25 minutes later, recall defendant to bench, and
cumulate sentences); Vincent v. United States, 337 F.2d 891, 893-894 (8th Cir. 1964) (defendant
had not yet begun serving his sentence when he had not left courtroom although he was told to
report to the marshal; trial court had authority to re-sentence him).
11. See Oxman v. United States, 148 F.2d 750, 752-53 (8th Cir. 1945) (defendant was
sentenced to six years' imprisonment and taken to marshal's office in the same building while
co-defendants were being sentenced; more than an hour later, the trial court ordered the
defendant returned to the courtroom and re-sentenced him; permissible because it was done prior
to commencement of service of sentence).
12. See Rowley, 114 F.2d at 501 (defendant had not begun to serve his sentence when he
had been removed from courtroom, led through vestibule, and was recalled from elevator).
13. For example, if the defendant was sentenced to pay a fine and he did so before the end
of the day. See Ex parte Lange, 18 Wall. at 176.
14. Under the Supreme Court's reasoning in DiFrancesco, 133-39, it appears that the
Double Jeopardy Clause might not necessarily bar an upward modification of a sentence under
certain circumstances even though the defendant had begun serving it. 449 U.S. at 133-39; see
United States v. Lundien, 769 F.2d 981, 985-87 (4th Cir. 1985) (analyzing DiFrancesco and
reasoning that double jeopardy did not bar resentencing even after a defendant had begun serving
his sentence, but concluding that due process concerns should be balanced in each case in
determining whether defendant's sentence can be increased once he has begun to serve it);
United States v. Busic, 639 F.2d 940, 949-50 (3d Cir. 1981) (stating that, under DiFrancesco,
trial judge could alter sentence upward on remand from appeal when original sentence on
multiple counts was incorrect); compare United States v. Henry,709 F.2d 298, 309-10 (5th Cir.
1983) (noting that the scope of the holding in DiFrancesco "remains uncertain," and declining to
reach the constitutional question).
15. See, e.g., DiFrancesco, supra; DiLorenzo, supra; Green, supra; Thomas, supra;
Rowley, supra.
16. Infra, slip op. at 9 (Keasler, J., dissenting).
17. The State did argue, in the court of appeals, that one rationale supporting its argument
that the sentence was final and unalterable at the moment the trial judge orally spoke the words,
was to avoid the situation in which a trial court could pronounce sentence, hear a victim impact
statement, and then alter its sentence (either up or down) based upon that statutorily-prohibited
consideration. See Tex. Code Crim. Proc. art. 42.03(b)(3) (victim impact statement must be
made "after sentence is pronounced").