EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO CARBONE D'ANGELO, acusado y apelante.

Núm. 8916.—*Sometido:* Diciembre 2, 1941. *Resuelto:* Diciembre 15, 1941.

*Rafael Atiles Moréu,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Antonio Carbone D'Angelo fué declarado culpable por la Corte de Distrito de Ponce, en grado de apelación, de un delito de acometimiento y agresión simple y apela de la sentencia que le condenó a pagar $5 de multa y las costas o a cumplir la pena subsidiaria correspondiente. Como fundamento de su recurso alega que la ·corte inferior erró al sentenciarlo sin que se hubiera probado el *corpus delicti* ya que es un factor vital la declaración del perjudicado que no compareció, al declararlo culpable en violación a la Enmienda VI de la Constitución de los Estados Unidos y al Acta Orgánica de Puerto Rico, ya que nunca se confrontó con el perjudicado a quien tenía derecho a contrainterrogar y a enfrentarse, al dictar sentencia contra Antonio Carbone D'Angelo bajo una denuncia contra Antonio Carbonel de Angelus, en ausencia de prueba de que se trataba de la misma persona, al dirimir el conflicto de la evidencia y por último, que la corte cometió abuso de discreción al imponerle una sentencia de $5 al acusado después de haberle impuesto momentos antes una de $2 por el mismo delito, elevando la pena sin que haya base en el récord para que la corte reconsiderara su sentencia en forma adversa al acusado.

Los dos primeros señalamientos pueden resolverse conjuntamente. Para sostenerlos no ha citado el apelante

autoridad alguna y somos de opinión de que carecen en absoluto de mérito.

Para probar el corpus delicti en un caso de acometimiento y agresión no es requisito indispensable que el perjudicado comparezca al juicio y declare. Existiendo prueba de cargo tendiente a demostrar que el acusado agredió al perjudicado quedó establecido el corpus delicti, no siendo necesario que fuera el propio perjudicado el que compareciera a declarar que recibió la agresión.

■ Tampoco se violó el precepto de nuestra Carta Orgánica al efecto de que todo acusado gozará del derecho de carearse con los testigos de cargo. El perjudicado al no comparecer a declarar el día del juicio en nada perjudicó al acusado. Ese derecho a confrontarse con los testigos de cargo consiste en garantizarle a todo acusado la oportunidad de contrainterrogarlos y de que no se le condene a base de testimonios *ex parte* o de *affidavits*. Véase 14 Am. Jur. 888, sec. 176. No se cometieron estos errores.

■ Tampoco el tercero, pues si bien es cierto que en la denuncia en un sitio se hizo constar el nombre del acusado como Antonio *Carbonel* de Angelus, y en otro Antonio *Carbone* de Angelus, el acusado en ningún momento, ante la corte inferior, alegó no ser la persona denunciada ni suscitó la cuestión que ahora en apelación por primera vez plantea. Al declarar en su defensa el acusado hizo constar que su nombre era Antonio Carbone D'Angelo, de manera que, por lo menos, su nombre Antonio y uno de sus apellidos, Carbone, coinciden con los que aparecen en la denuncia. En cuanto al segundo apellido, "de Angelus" o "D'Angelo", por su sonido en la pronunciación son tan similares, que el error en la denuncia al usar el segundo fué más bien de carácter clerical. Es aplicable, por tanto, la doctrina de "idem sonans" la que se expresa en 45 C. J. 383, sec. 19, en la forma siguiente:

"La ley no se fija tanto en la forma de deletrear los nombres como en su sonido. Gran latitud es permitida en la forma de deletrear y

pronunciar nombres propios, y en los procedimientos legales, bien civiles o criminales, si dos nombres, según se pronuncian corrientemente... suenan igual, una variación en la forma de deletrearlos es inmaterial. Aun ligeras diferencias en su pronunciación no tienen importancia; si el oído atento encuentra dificultad en distinguir los dos nombres cuando son pronunciados, son *idem sonans,* y aunque se deletreen en forma diferente, deben considerarse como el mismo. Se presumirá que los nombres son pronunciados de acuerdo con las reglas generales del idioma inglés, *a menos que se pruebe* que pertenecen a otro idioma y son pronunciados en forma distinta en dicho idioma y también en el uso general de la comunidad.''

En las notas a esta sección se citan numerosos casos en que se ha aplicado la doctrina.

Así en el caso de *Golson* v. *State,* 73 So. 753 se resolvió que cuando el acusado fué denunciado bajo el nombre de ''Golson'', una alegación para anular el veredicto, alegando que su nombre correcto era ''Gholston'', no procedía bajo la doctrina de idem sonans, pues los dos nombres, aunque se deletrean diferentemente, suenan o se pronuncian igual y el oído tiene dificultad en distinguirlos y deben considerarse el mismo, y que la inserción de la letra ''t'' antes de la terminación ''son'' constituye una variación inmaterial en el sonido.

En el de *Newbrough* v. *Moore,* 202 S. W. 547 se resolvió que la regla era aplicable a los nombres ''Newbraw'' y ''Newbrough''.

En 1 Wharton *Criminal Evidence,* 10 ed., 290, sec. 96, se dice:

''Idem sonans significa del mismo sonido... la regla de idem sonans es que la variación es inmaterial a menos que sea tal que conduzca a conclusiones erróneas o perjudiciales a la parte.''

Algunos de los nombres citados por Wharton en que se ha aplicado la doctrina son los siguientes: McLaughlin por McGloflin; Usrey por Userry; Aughron por Autrum; Benedetto por Beniditto; Whyneard por Winyard.

Somos de opinión que por su sonido en el idioma castellano los nombres ''de Angelus'' y ''D'Angelo'' son idem

sonans y que el acusado, al no hacer objeción alguna en la corte inferior así lo aceptó y como consecuencia no se cometió el error imputado.

El cuarto señalamiento ataca la suficiencia de la prueba para condenar al acusado y se alega que la corte inferior cometió manifiesto error al dirimir el conflicto de la evidencia.

La prueba de cargo consistió únicamente en la declaración del policía insular Francisco Rivera Díaz y la de descargo en la declaración del acusado y del mismo policía denunciante. Al dictar sentencia la corte se expresó en esta forma:

" ... La corte va a resolver. Póngase de pie el acusado. En este caso no hay nada más que dos testigos; el propio acusado y el policía denunciante Francisco Rivera Díaz. De suerte, que hay evidencia contradictoria, y le toca a la corte resolver a cuál testigo cree y a cuál testigo no cree. Ese es el único problema ante la corte. La corte no sabe por qué motivo, ni en la corte municipal ni en la corte de distrito, no ha sido citado para comparecer en juicio el presunto agredido Blas Buono Petrilli. La corte no puede imaginarse que caprichosamente un policía presente una denuncia contra un ciudadano. Podría equivocarse en cuanto a la calificación del delito, o que la persona lo cometió en tal o cual forma, pero en este caso la corte no está convencida y cree que no ha sido un capricho del policía el presentar su denuncia. La corte ha oído también la declaración del acusado Antonio Carbone D'Angelo, y tiene que tener en cuenta el propio interés que tiene todo acusado en su propio caso. Desde luego, resolviendo el conflicto de la evidencia, la corte le da todo el peso y toda la creencia al testigo Francisco Rivera Díaz, Policía Insular, y en su consecuencia, lo declara a usted, Antonio Carbone D'Angelo, culpable y convicto del delito de acometimiento y agresión, y en su consecuencia le impone a usted, Antonio Carbone D'Angelo, dos dólares de multa, o un día de cárcel por cada dólar que deje de satisfacer, entendiéndose que esta sentencia no es concurrente y sí sucesiva. Todo ello con las costas."

Hemos leído las declaraciones prestadas por los dos únicos testigos del caso y nada encontramos en los autos que justifique que esta corte varíe la conclusión a que llegó el

juez sentenciador al dirimir el conflicto que existe en la prueba.

██ El último señalamiento de error levanta una cuestión hasta cierto punto nueva en esta jurisdicción. Después de haber dictado la corte inferior la sentencia que acabamos de citar, el abogado defensor solicitó su reconsideración alegando que de acuerdo con la prueba presentada el acusado era inocente. La corte, al terminar de argumentar el abogado su moción, resolvió lo siguiente:

"La corte, resolviendo la moción de reconsideración, entiende y hace constar que se ha basado en la declaración del testigo denunciante, que relató los hechos, y que concuerdan los hechos con la denuncia, y, reiterando, como reitera, la declaración de culpabilidad del acusado en este caso Antonio Carbone D'Angelo, *entiende que ha sido demasiado benigna en la pena,* y declarándolo culpable, *le impone cinco dólares de multa, o un día de cárcel* por cada dólar que deje de satisfacer, y las costas." (Itálicas nuestras.)

Alega el acusado apelante que la corte inferior cometió abuso de discreción al imponerle una multa de $5 después de haberle impuesto momentos antes una de $2 y sólo por el hecho de haber solicitado la reconsideración de esta sentencia.

El único caso en que esta cuestión ha sido tratada y, en un aspecto, resuelta por esta corte, fué en el de *Ex Parte Zacarías y El Pueblo,* 41 D.P.R. 730. En dicho caso el acusado fué declarado culpable de un delito de portar armas y sentenciado a cumplir un mes de cárcel. El mismo día la corte, *motu proprio,* volvió a llamar al acusado y lo sentenció a cumplir tres meses de cárcel. Alegando la nulidad de la sentencia el acusado solicitó su libertad por medio de un auto de hábeas corpus que le fué denegado por la corte de distrito y en apelación esta corte confirmó la sentencia diciendo:

"La ameritada sentencia y posiblemente otras partes de los autos demuestran que todos los hechos de este caso tuvieron lugar el mismo día. El juicio fué celebrado el 24 y ambas supuestas sentencias fue-

ron dictadas en la misma fecha. La regla indubitada es que la corte puede *corregir* sus sentencias durante el término en que las ha pronunciado. *King* v. *Price,* 6 East 326, 102 Comp. 1312, donde el Lord Ellenborough dijo que una sentencia distinta podía ser dictada dentro del término. *Regina* v. *Fitzgerald,* 1st Salkeld 401, 91 Comp. 347, demuestra que el período de prisión puede ser aumentado durante el término. Estos y otros casos son citados por la corte en *State* v. *Daugherty,* 30 N. W. 685, resolviendo el mismo principio.

"Por otra parte, una consideración de *In re Sullivan,* 3 Cal. App. 193; *Ex parte Lange,* 18 Wall. 163; *Commonwealth* v. *Foster,* 122 Mass. 317; *Estados Unidos* v. *Veyson,* 27 Jurisprudencia Filipina 481, tienden a demostrar que una vez que ha comenzado la ejecución de la sentencia la corte carece de facultad para corregirla. El Juez Asociado Sr. Miller en *Ex parte Lange,* supra, demuestra que el principio en que se basan estas decisiones es muy similar a una segunda exposición por el mismo delito (*jeopardy*). La corte en dicho caso dice que la razón por la cual un hombre no debe sufrir una segunda sentencia o una sentencia más severa cuando la primera está en proceso de ejecución, es la misma razón o una similar a la de un segundo juicio, después de haberse convicto o absuelto al acusado. ... "

" ＊  ＊  ＊  ＊  ＊  ＊  ＊

" ... El apelante no nos convence de que la corte municipal perdiera su facultad de *corregir* la sentencia." (Itálicas nuestras.)

Las dos doctrinas expuestas en el caso que acabamos de citar son las reconocidas por las autoridades y jurisprudencia de los Estados Unidos con ciertas limitaciones que notaremos más adelante. En cuanto a que una vez que el acusado ha empezado a cumplir su sentencia la corte no puede, ni aun en el mismo término, variarla en ninguna forma, la jurisprudencia es casi unánime. Véase 24 C.J.S. 118, sec. 1589.

Ahora bien, en cuanto a aquellos casos en que el acusado no ha empezado a cumplir la sentencia originalmente impuesta la regla, según la expone 24 C.J.S. 116, sec. 1588, es la siguiente:

"En ausencia de disposiciones constitucionales o estatutarias en contra, la corte retiene un dominio absoluto sobre sus sentencias, re-

soluciones u órdenes durante el término en el cual se dictaron o antes de cualquiera otra fecha para la cual ya el caso habrá pasado fuera de la jurisdicción de la corte. Específicamente, la corte, en cualquier momento durante el término, tiene autoridad para reconsiderar su sentencia, y para *modificarla* mitigando o *aumentando* su severidad, cuando la sentencia original no ha sido ejecutada o puesta en vigor. La corte puede actuar así bien a moción de parte interesada o *motu proprio*. El ejercicio por la corte sentenciadora de su facultad para modificar una sentencia ya dictada descansa en la discreción de dicha corte, *pero dicha facultad no debe ser ejercitada arbitrariamente y sin motivo suficiente, o excepto de una manera legal*. La corte sentenciadora, desde luego, no está obligada a anular o modificar una sentencia por la única razón de que haya considerado adoptar tal medida o indicado su intención de así actuar. Al interpretarse la regla de que una sentencia puede ser modificada durante el término en el cual se dictó, se ha sostenido que si el acusado ha sido sentenciado en forma irregular o inadvertidamente y sin la debida consideración, o sin cumplirse con los requisitos y formalidades de ley, el sentenciarlo de nuevo de acuerdo con la ley, constituye un ejercicio apropiado de dicha facultad.''

Aun cuando en el caso de *Ex parte Zacarías y El Pueblo,* supra, no se exponen todos los hechos del mismo, de la opinión surge que lo que hizo la corte municipal fué *corregir* su sentencia y esta corte reconoció su facultad para hacerlo. Posiblemente se trataba de un caso por violación al artículo 2 de la Ley que Prohibe la Portación de Armas en Reuniones Lícitas y cuya pena mínima es la de tres meses de cárcel, y al darse cuenta la corte de que sólo le había impuesto un mes al acusado, procedió a corregir su sentencia para ajustarla a la ley.

Sea ello como fuere, no hay duda de que la doctrina general es al efecto de que las cortes, antes de que la sentencia haya sido ejecutada, tienen autoridad para reconsiderarlas y modificarlas, bien mitigando o aumentando la pena impuesta. Esto pueden hacerlo a moción de parte interesada o motu proprio. Algunos tribunales sostienen que esta facultad de las cortes sentenciadoras es absoluta. Así, en

el caso de *Cisson* v. *U. S.*, 37 F. (2d) 330, el Juez Parker dijo lo siguiente:

"La facultad de un juez para modificar y anular una sentencia durante el término en el cual fué dictada, tiene un antiguo origen y está basada en las más sabias razones. Después de un estudio más intenso del caso, él puede, y frecuentemente así lo hace, decidir que una sentencia impuesta dentro de dicho término debe ser reducida o aumentada. Puede ser que haya tenido conocimiento de hechos adicionales con respecto a un caso que demuestren que la sentencia original era completamente inadecuada o excesivamente severa; ..."

Al mismo efecto véase *State* v. *McLamb*, 166 S. E. 507 y *State* v. *Young*, 187 S. E. 561 y otros casos citados en el tomo de C. J. S., supra.

Otros tribunales, sin embargo, sostienen la regla pero con la limitación de que la facultad de las cortes no debe ser ejercitada arbitrariamente y sin que exista algún motivo que lo justifique. Típico de estos casos es el de *Meaders* v. *State*, 22 S. E. 527, en el que los hechos son muy parecidos a los del caso de autos. Meaders fué sentenciado a pagar una multa de $25 y a cumplir un año de prisión, y al anunciar su abogado que presentaría una moción de nuevo juicio, la corte reconsideró su sentencia y le impuso al acusado una multa de $50 y un año de prisión. La Corte Suprema se expresó así:

"Como regla general, las sentencias de una corte quedan bajo su jurisdicción hasta el fin del término, y una sentencia puede ser enmendada en cualquier momento durante el término y antes de que se haya comenzado a extinguir. 21 Am. & Eng. Enc. Law, 'Sentence', pág. 1084. Y véase también *Railroad Co.* v. *Jackson*, 86 Ga. 684, 13 S. E. 109, y citas ahí incluídas. Pero *aunque la corte tenía derecho a modificar la sentencia cuando así lo hizo, actuó incorrectamente al enmendarla porque el abogado defensor anunció su intención de presentar una moción de nuevo juicio. La presunción es que la sentencia originalmente impuesta fué en la opinión de la corte un castigo, y del récord no aparece otro motivo para enmendar dicha sentencia que no sea el indicado en el pliego de excepciones.* Aunque no resolvemos que la sentencia de la corte *a quo* debe ser revocada por

motivo de la modificación de la sentencia bajo estas circunstancias, sí queremos indicar nuestra desaprobación de esta práctica.'' (Itálicas nuestras.)

Aun cuando la sentencia en dicho caso no fué revocada por haber sido reconsiderada, sí lo fué por otro error.

De todo lo expuesto nos parece que debemos ratificar la doctrina de que las cortes inferiores tienen amplia facultad para reconsiderar sus sentencias, antes de que sean ejecutadas, bien a moción de parte o motu proprio, para ajustarlas a la ley, tanto para corregir un error en que hayan podido incurrir al imponerlas, como para ajustarlas a cualquier situación de hechos que sean debidamente probados por una u otra parte.

Somos de opinión, sin embargo, que esa facultad no debe ejercitarse arbitrariamente, sin que exista un motivo justificado. La presunción es que cuando una corte dicta su sentencia lo hace tomando en consideración todos los hechos concurrentes probados. Aumentar la penalidad impuesta por el mero hecho de que el acusado solicite la reconsideración de la sentencia, aun cuando la originalmente impuesta sea leve, como en el caso de autos lo fué, y sin que exista nada en el récord que demuestre que la corte tuvo ante su consideración prueba adicional, no constituye un ejercicio razonable de la facultad discrecional así reconocida a las cortes inferiores.

*Debe, por lo tanto, modificarse la sentencia recaída en el sentido de rebajarse la pena impuesta a $2 de multa o en su defecto de pago a cumplir un día de cárcel por cada dólar que deje de satisfacer el acusado y las costas y, así modificada, se confirma.*