Acasio Santiago Mercado, peticionario, *v.* James M. Jones, etc., demandado.

Número 589.
*Sometido:* 11 de marzo de 1953. *Resuelto:* 17 de abril de 1953.

*Acasio Santiago Mercado,* por su propio derecho; *Hon Secretario de Justicia José Trías Monge* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del demandado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del tribunal.

El peticionario en este caso señor Acasio Santiago Mercado, nos solicita la declaración de nulidad de una sentencia de presidio con trabajos forzados que le fuera impuesta por la anterior Corte de Distrito de Mayagüez, el día 13 de septiembre de 1948, y que procedamos a ordenar su excarcelación por encontrarse recluído en virtud de una sentencia nula. El señor Fiscal de este tribunal está conforme que la sentencia dictada es nula y que debemos ordenar la excarcelación del peticionario.

Los hechos esenciales para la resolución de este caso son los siguientes: el día 30 de julio de 1948, el señor Fiscal de Distrito de Mayagüez don Baldomero Freyre, presentó una acusación contra el peticionario por un delito de escalamiento en primer grado; el día 7 de septiembre de 1948, comparecieron ante la ilustrada sala sentenciadora de Mayagüez, el señor Fiscal Auxiliar de dicho distrito don Julio Fernández Cabrera, en representación de El Pueblo de Puerto Rico y el acusado señor Acasio Santiago Mercado, acompañado y representado por su abogado don Ildefonso Freyre, procediéndose a la vista del caso, al final de la cual fué declarado el acusado culpable del delito de escalamiento en primer grado; el día 13 de septiembre de 1948, compareció el convicto acompañado y representado por su abogado don Ildefonso Freyre al acto del pronunciamiento de la sentencia, y de acuerdo con el libro de minutas de la sala sentenciadora, ocurrieron los incidentes que a continuación se detallan:

"Interrogado el acusado, éste por voz de su abogado, manifiesta no tener impedimento legal para que se le dicte sentencia.

"La Corte pregunta al acusado si con anterioridad a la comisión de este delito, ha sido sentenciado (digo) convicto, sentenciado y recluído en prisión en Puerto Rico por algún otro delito, éste manifiesta en la afirmativa.

"Siendo ello así, el acusado es inelegible para los beneficios de Sentencias Probatorias y en este acto la Corte lo sentencia a una pena indeterminada de 3 a 5 años de presidio con trabajos forzados, sin costas y con abono de cualquier prisión preventiva que hubiere sufrido por esta misma causa.

"Una vez el acusado sentenciado, éste se dió a la fuga siendo capturado por los alguaciles de la Corte con la ayuda de un Guardia Penal.

"El acusado es conducido nuevamente a la Corte y *ésta reconsidera su sentencia dictada anteriormente al acusado* de 3 a 5 años de presidio con trabajos forzados y lo condena a la pena de 7 a 10 años de presidio con trabajos forzados y con abono de cualquier prisión preventiva que hubiere sufrido por esta misma causa, sin costas."

Después de la apelación correspondiente ante este mismo tribunal, la cual fué desestimada por falta de jurisdicción, el sentenciado fué trasladado de la custodia judicial, bajo la cual había permanecido en prisión preventiva, a la custodia ejecutiva, bajo la cual permanece todavía.

Los fundamentos legales que aduce el peticionario para que anulemos la sentencia que le fué impuesta, son los siguientes: (1) que el tribunal sentenciador no tenía facultad para dejar sin efecto la primera sentencia dictada e imponerle otra sentencia al peticionario, ya que de acuerdo con el artículo 44 del Código Penal de Puerto Rico, no se puede sentenciar dos veces a un convicto por el mismo delito; (2) que habiendo procedido el tribunal sentenciador a imponerle al acusado una sentencia menor, el hecho de haberle impuesto posteriormente una sentencia mayor, lesiona sus derechos constitucionales.

Los hechos esenciales y los fundamentos legales de este recurso, nos obligan a examinar cuatro proposiciones espe-

cíficas: (1) la facultad de un juez sentenciador para reconsiderar una sentencia; (2) la facultad de un juez sentenciador para dejar sin efecto una sentencia menor, e imponer en reconsideración, una sentencia mayor; (3) la posible lesión a los derechos constitucionales del peticionario y (4) el posible error que pueda haber sido cometido por el juez sentenciador dentro de las circunstancias que mediaron en el pronunciamiento de la sentencia.

▬▬▬ (1) La facultad de un juez sentenciador para reconsiderar una sentencia impuesta dentro de un proceso criminal, se encuentra restringida por ciertas normas que deben esclarecerse antes que se pueda llegar a una conclusión definitiva. La primera norma es que el sentenciado debe encontrarse todavía bajo la custodia del tribunal sentenciador, sin haber empezado a cumplir ninguna parte de la sentencia original; la segunda norma es que la reconsideración no se produzca a menos que un error en el nombre, en la pena impuesta, o en la aplicación de la ley a los hechos probados en el proceso, justifiquen la reconsideración de la sentencia original; la tercera norma es, que existan ciertas circunstancias que justifiquen la mitigación o la agravación de la sentencia. *Ex parte Zacarías y El Pueblo*, 41 D.P.R. 730 (1931); *Pueblo* v. *Carbone*, 59 D.P.R. 610 (1941); *Meaders* v. *States*, 22 S.E. 527 (1895); *Nichols* v. *United States*, 106 Fed. 672 (1901); 168 A.L.R. 706 (1945).

(2) La facultad de un juez sentenciador para dejar sin efecto una sentencia menor, e imponer en reconsideración una sentencia mayor, está controlada esencialmente por la reserva constitucional de una posible segunda exposición por sentencia por el mismo delito. Tal vez fuera conveniente aclarar cuándo es que podría darse el caso de una segunda exposición por sentencia, dentro de un incidente de reconsideración de sentencia. La segunda exposición por sentencia se produce, cuando la sentencia en reconsideración se dicta después que el sentenciado ha pasado de la custodia judicial a la custodia ejecutiva para cumplir la sentencia impuesta. Sabido es que

desde el momento en que se produce el arresto de un acusado hasta el momento en que se sentencia a un convicto, el mismo permanece bajo la custodia del tribunal sentenciador.

Los artículos 327 y 330 del Código de Enjuiciamiento Criminal de Puerto Rico determinan el trámite a seguirse después de la sentencia. "Cuando se haya dictado sentencia se entregará inmediatamente una copia certificada del original al oficial que tenga la obligación de ejecutarla, y no será necesaria ninguna otra orden ni autorización para justificar o pedir la ejecución", dispone el artículo 327 del Código de Enjuiciamiento Criminal de Puerto Rico; "si la sentencia es a reclusión en penitenciaría, el oficial del tribunal, a quien corresponda este servicio, debe llevar y entregar el sentenciado al alcaide de la penitenciaría", señalada por el ejecutivo, dispone el artículo 330 del mismo código. La recepción del sentenciado por el alcaide de la penitenciaría, es la actuación que determina el final de la custodia judicial y el comienzo de la custodia ejecutiva. *Miller* v. *Snoock*, 15 F.2d 68 (1926).

(3) La facultad de un juez sentenciador para dejar sin efecto una sentencia menor e imponer en reconsideración una sentencia mayor, mientras el acusado se encuentra bajo custodia judicial, ha sido sostenida por los tribunales bastante uniformemente, *Miller* v. *Snook*, supra; *De Maggio* v. *Coxe*, 70 F.2d 840 (1934); *Rowley* v. *Welch*, 114 F.2d 499 (1940). Si el sentenciado se encuentra bajo custodia judicial, cualquiera mitigación o agravación de la nueva sentencia dictada en reconsideración, no se considera como una segunda exposición por sentencia por el mismo delito, y por lo tanto, no hay lesión de ningún derecho constitucional del sentenciado por dicho fundamento.

¿Puede la agravación en reconsideración, de cualquiera sentencia originalmente menor, violar la reserva constitucional del debido proceso de ley? El debido proceso de ley es una de esas fórmulas elásticas de justicia sustancial que no es suceptible de definición genérica. No es una norma invariable que pueda aplicarse por su propia virtualidad inde-

pendientemente de las circunstancias que medien en el caso. Históricamente se le consideró como aquel procedimiento que estuviera mas en armonía con las normas consuetudinarias del pueblo:—*per legem terrae*—, equivalente en algún sentido a la frase más formulista del "*secundum norman legis*" de la concepción romántica. De manera pues, que se trata no sólo de un debido "procedimiento" en ley, sino además de ciertas normas de naturaleza sustantiva. Su composición puramente procesal consiste esencialmente de una oportunidad para ser oído. Su composición puramente sustantiva consiste en una restricción impuesta al gobierno democrático en cuanto a actuaciones confiscatorias que puedan afectar la vida, la libertad 'o la propiedad del ciudadano. A veces resulta difícil trazar una línea divisoria entre los elementos puramente procesales y los elementos puramente sustantivos. Hasta cierto extremo cada aplicación del debido proceso de ley puede confrontarse con la posibilidad de una transgresión confiscatoria de tipo sustantivo y con la posibilidad de una ausencia total de defensa de tipo procesal.

En derecho penal, sin embargo, el debido proceso de ley se relaciona más directamente con el aspecto puramente procesal de la doctrina. El debido proceso de ley, reducido a sus términos más categóricos, consiste de los siguientes elementos: (1) una acusación criminal específica de la cual se notifica al acusado; (2) una oportunidad para contestar dicha acusación a conciencia; (3) una oportunidad para confrontarse con la prueba adversa y contradecirla; (4) una oportunidad para presentar testimonios de descargo. Ningún hecho que no haya sido probado dentro del debido proceso de ley, de acuerdo con las técnicas legales prescritas para la recepción de testimonios, debe ser considerado para concluir *sobre la culpabilidad del acusado*.

Pero una vez decretada la culpabilidad de un acusado, el debido proceso de ley, si alguna aplicación tuviere, queda restringido esencialmente a los siguientes elementos procesales: (1) indagación por el juez cerca de la parte o de su abogado

sobre las razones que existan para que no se dicte sentencia en su contra; (2) oportunidad al acusado para que éste solicite del tribunal que se le permita presentar prueba de mitigación sobre "la magnitud de la pena" a ser impuesta, cuando la imposición de dicha pena se haya dejado a discreción del juez sentenciador, artículos 320 y 321 del Código de Enjuiciamiento Criminal de Puerto Rico—*El Pueblo de Puerto Rico* v. *Valcourt*, 16 D.P.R. 728—; (3) pronunciamiento de la sentencia en presencia del acusado para que éste pueda a conciencia formular las excepciones correspondientes, solicitar la reconsideración de cualquiera sentencia errónea u opresiva, o apelar de la misma desde una fecha fija. En cuanto a la imposición de la pena en sí, es claro, que a menos que no se solicite del tribunal oportunidad para presentar prueba de agravación o de mitigación, la misma no forma parte del debido proceso de ley. Para nosotros es claro asimismo que la facultad de un juez para reconsiderar una sentencia no forma parte de ningún derecho constitucional del acusado, siempre que el juez se mantenga dentro de los límites de imposición fijados por el estatuto.

Aunque la facultad de un juez para imponer una pena mayor en reconsideración mientras el sentenciado esté bajo custodia judicial no se discute, los tribunales de apelación a veces conceden oportunidad para revisar los posibles méritos de la agravación, con el objeto de proteger la buena práctica judicial que las sentencias no deben ser irrazonables, opresivas o vindicativas. Mientras más se desarrollan las ciencias sobre el hombre, mayor es el énfasis que adquiere la tesis que la sentencia que se imponga a un convicto de delito público, no debe ir más allá de lo necesario para lograr su reajuste social.

(4) El posible error que pueda haber sido cometido por el juez sentenciador al imponer en reconsideración una pena mayor a la pena original, está controlado pues por las circunstancias en que se haya producido la agravación de la sentencia. *Peterson* v. *United States*, 246 Fed. 118, 119. (1917). Durante la vista del recurso ante este tribunal se

ofreció por el señor fiscal, sin objeción del peticionario, la declaración jurada obtenida del ilustrado Juez Sentenciador, señor Rodolfo Ramírez Pabón, que extractada en sus contenidos pertinentes dice así:

"P. ¿El acusado o su abogado o el fiscal solicitó reconsideración de la sentencia?

"R. Tanto el abogado del acusado como el fiscal estaban presentes en el momento de la reconsideración de la sentencia y ni el abogado del acusado ni el fiscal pidieron reconsideración de la misma.

"P. ¿Entonces el tribunal—me imagino *que por la conducta observada por el acusado—reconsideró la sentencia?*

"R. Evidentemente ésa es la realidad.

"P. ¿Esa sentencia original que se dictó de 3 a 5 años estaba en armonía con la ley de acuerdo con la penalidad que establece en el artículo 410 del Código Penal para el delito de escalamiento en primer grado que se castiga de 1 a 15 años?

"R. Sí, señor.

"P. ¿Si no es por la fuga necesariamente usted no hubiera reconsiderado la sentencia?

• "R. No cabe duda que la actitud del acusado, *cuyos antecedentes yo conocía y la situación de confusión y de desorden que creó en el tribunal* con motivo de su fuga, *fueron factores que influyeron en mi ánimo para los efectos de la reconsideración.*

"P. ¿No se siguió ninguna acción contra el acusado por infracción al artículo 152 del Código Penal?

"R. No se siguió niguna acción contra él por haberse fugado.

"P. ¿Cuando se reconsideró la sentencia estaba presente el abogado del acusado?

"R. Sí, señor, estaba presente el abogado del acusado.

"P. ¿Desea añadir algo más a su declaración?

"R. Creo que lo dicho es suficiente ya que la declaración que he prestado refleja, a mi juicio, la realidad de lo que ocurrió en aquella ocasión.

"P. ¿Cree el compañero que estas personas que intervinieron en la captura: alguaciles y guardias penales, no añadirían nada a su declaración?

"R. La impresión que tengo es que ellos declararían sustancialmente lo mismo.

"P. ¿El acusado fué arrestado dentro del mismo edificio de la corte?

"R. Cuando bajaba las escaleras, no llegó a salir del edificio."

Es indudable que una de las causas que producen la reconsideración de la sentencia en este caso, es el intento del acusado de obstruir el curso de la justicia, en el mismo instante en que el juez sentenciador le imponía la primera sentencia. Cuando los alguaciles logran detenerlo, lo conducen nuevamente a presencia del juez sentenciador, quien procede casi en el mismo acto, a imponerle la segunda sentencia. ¿Tenía facultad el juez en ese momento para reconsiderar la sentencia anterior e imponerle una mayor? La pregunta tenemos que contestarla en la afirmativa. ¿Estuvo justificado el juez para aumentarle la pena originalmente impuesta? Es indudable que la sentencia original era en extremo benigna para un reincidente. En vez de agradecer la generosa disposición del tribunal hacia la benignidad, el sentenciado adopta en presencia del mismo juez sentenciador, una conducta tumultuosa, de abierto desafío a la autoridad judicial, creando "una situación de confusión y de desorden" en el tribunal. No es de extrañarse pues, que ante esta provocación inusitada, el juez se sintiera obligado a reconsiderar su anterior sentencia.

Después de declarada la culpabilidad de un acusado, la misión del juez es distinta. Mientras en la parte del proceso criminal que conduce a la declaración de culpabilidad su obligación principal es velar por la limpieza absoluta del procedimiento mediante el cual se va a privar a un ser humano de su libertad, en el pronunciamiento de la sentencia tiene que medir otros riesgos. Su posición es la de un sociólogo ante el complejo humano en su totalidad. Para ello tiene que medir tanto el riesgo que cualquiera represión insusitada o vindicativa pueda representar para el sentenciado, como el riesgo que cualquiera represión inadecuada o ineficaz pueda representar para la sociedad. Uno de los elementos de juicio que un juez sentenciador puede utilizar para determinar qué clase de sentencia debe imponer en cada caso, es el grado de adapta-

bilidad que todavía pueda desarrollar un delincuente para al acatamiento pacífico a las prácticas legales establecidas por el orden público. Cada conducta antisocial constituye un problema distinto que debe ser resuelto por su propia virtualidad, dentro de los más altos ideales de servicio a la causa del hombre. Pero ello no significa que un juez sentenciador deba disolver el poder coercitivo del estado dentro de un vicioso romanticismo que tienda a convertirse en un contrasentido de la justicia.

El juez sentenciador tenía dos alternativas para enfrentarse a la conducta violenta e inusitada del sentenciado: o reconsiderar su anterior sentencia u ordenar el arresto del peticionario para un nuevo enjuiciamiento. De las dos alternativas escogió la que resultaba más lógica dentro de la etapa del pronunciamiento de la sentencia, la que se ajustaba más al nuevo elemento inesperado de conducta antisocial que se desarrolla ante sus propios ojos, la que proveía el remedio más eficaz al noble error de su benignidad. Teniendo facultad para ello, y estando en el momento apropiado para hacerlo, nos parece que exigir un nuevo enjuiciamiento del peticionario sería descender a un purismo legalístico poco constructivo.

*Debe declararse sin lugar el recurso solicitado.*

---

Opinión concurrente del JUEZ PRESIDENTE SEÑOR SNYDER.

Concurro en la sentencia del Tribunal y estoy sustancialmente de acuerdo con la opinión del Juez Asociado Sr. Belaval. Sin embargo, no puedo concurrir en la discusión del debido procedimiento de ley que se hace en dicha opinión. En cuanto a mí concierne no existe en este caso cuestión alguna de debido procedimiento de ley. *Cf. Townsend* v. *Burke*, 334 U.S. 736; *Keenan* v. *Burke*, 342 U.S. 881; *Williams* v. *New York*, 337 U.S. 241; *Due Process and Legislative Standards in Sentencing*, 101 U. of Pa.L.Rev. 257.

Al sentenciar de nuevo al acusado, quien estaba representado por abogado, el tribunal sentenciador tomó en considera-

ción cierta conducta y ciertos actos del acusado que se desarrollaron en presencia del tribunal. No comprendo cómo pueda decirse que al actuar en esta forma (1) el tribunal infringiera los artículos 320 y 321 del Código de Enjuiciamiento Criminal, y (2) que tal supuesta infracción trajera como consecuencia la nulidad de la sentencia y por consiguiente que ésta se pudiera impugnar por hábeas corpus.

---

Opinión disidente emitida por el JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ.

Después de dar detenido estudio a las cuestiones envueltas en este recurso, me veo precisado a disentir. Explicaré brevemente los fundamentos de mi disenso.

Acepto, por ser buena doctrina de ley, que el juez sentenciador tenía facultad para reconsiderar la sentencia de 3 a 5 años de presidio impuesta al aquí peticionario. La opinión del Tribunal expone correctamente la regla general en tal sentido, así como las normas dentro de las cuales puede y debe ejercitarse dicha facultad. Dichas normas las sintetiza así: "La primera norma es que el sentenciado debe encontrarse todavía bajo la custodia del tribunal sentenciador, sin haber empezado a cumplir ninguna parte de la sentencia original; la segunda norma es que la reconsideración no se produzca a menos que un error en el nombre, en la pena impuesta, o en la aplicación de la ley a los hechos probados en el proceso, justifiquen la reconsideración de la sentencia original; la tercera norma es, que existan ciertas circunstancias que justifiquen la mitigación o la agravación de la sentencia. *Ex parte Zacarías y El Pueblo*, 41 D.P.R. 730 (1931) ; *Pueblo* v. *Carbone*, 59 D.P.R. 610 (1941) ; *Meaders* v. *State*, 22 S.E. 527 (1895) ; *Nichols* v. *United States*, 106 Fed. 672 (1901) ; 168 A.L.R. 706 (1945)."

La primera norma está cumplida en el presente caso. El acusado estaba aún bajo custodia judicial, y por lo tanto no había comenzado aún la ejecución de la sentencia impuéstale

originalmente. En tales condiciones no existía inhibición constitucional que impidiera la reconsideración por razón de *double jeopardy*.

La segunda norma, sin embargo, no se cumple en este caso, ya que la reconsideración aquí no se produjo para corregir "un *error* en el nombre, *en la pena impuesta*, o en la aplicación de la ley a los hechos probados en el proceso." (Bastardillas mías.) La reconsideración aquí se produjo para aumentar la pena, tomando en consideración hechos ocurridos *con posterioridad* a la fijación de la pena original. Ésta fué fijada por el Juez haciendo uso de aquellos elementos de juicio que tuvo a su alcance y que consideró apropiados para graduar la pena que debía imponer: los hechos probados en el proceso y la condición de exconvicto del acusado la cual, aunque no se alegó en la acusación, vino a su conocimiento en ese momento y constituía, sin duda, indicio bastante de la conducta y carácter previos del acusado, que podían legítimamente ser tomados en consideración. Nada hay en el récord ante nos que indique que el juez sentenciador sufriera error alguno en la valoración de esos factores, al imponer la sentencia original, que tuviera que ser corregido.

La tercera norma tampoco, a mi juicio, se cumple. Las "circunstancias que justifiquen la mitigación o la agravación de la sentencia" no concurren en este caso. Hechos específicos ocurridos con posterioridad a la imposición de sentencia, sean o no sean constitutivos de delito, no son las *circunstancias agravantes* "que pueden justamente ser tomadas en consideración" por el tribunal para determinar la magnitud de la pena, dentro de la autoridad conferídale por el artículo 320 del Código de Enjuiciamiento Criminal, que dispone: "Después de una confesión o veredicto de culpabilidad y siempre que se deje a discreción del tribunal la magnitud de la pena, el tribunal, a indicación verbal de cualquiera de las partes, *de que hay circunstancias agravantes o atenuantes* de la pena *que pueden justamente ser tomadas en consideración*, puede, a su arbitrio, oír brevemente esa indicación en el plazo que

fije y dando aviso a la parte contraria, en la forma que estime conveniente." (Bastardillas mías.)

Completando el anterior precepto, el artículo 321 del propio cuerpo legal dispone:

"Las circunstancias referidas deben ser presentadas por las declaraciones de testigos examinados en sesión pública del tribunal, excepto cuando el testigo esté tan enfermo o tan débil que no pueda comparecer, en cuyo caso su declaración puede ser tomada por un juez de paz del distrito fuera del tribunal, después de notificar a la parte contraria del modo que el tribunal estime oportuno. No se ofrecerá al tribunal, *ni recibirá éste* ni ninguno de los otros jueces que lo formen ninguna declaración jurada, testimonio o representación de cualquier género que sea, escrita o verbal, que tienda a la agravación o atenuación del castigo, a menos que no sea con arreglo a lo prescrito en éste y en el artículo anterior."

Definiendo el alcance de idéntica disposición de ley se dijo en *People* v. *Rudolph*, 153 Pac. 721 (Cal., 1915) : "El objetivo manifiesto de la sección [1204 del Código Penal de California] es el de autorizar al tribunal, luego de obtenida una convicción y antes de pronunciarse sentencia en cualquier causa criminal, a recibir testimonio bien en mitigación o en agravación de la pena a imponerse. A este fin cualquier testimonio que tenga que ver con el carácter o los antecedentes de la persona convicta—*haya sido hasta entonces de buen o mal carácter o haya tenido una buena o mala reputación o haya sido previamente convicta* de un acto contrario a la ley— puede ser presentado al tribunal." (Bastardillas mías.) 8 Cal. Jur., sec. 478, pág. 460. Véase además, 2 Alexander, *The Law of Arrest*, sec. 765, pág. 1931 et seq para el alcance que se atribuye al término "circunstancias agravantes" cuando se trata de aumentos en las penas, así como *Ingram* v. *State*, 39 Ala. 247, 84 Am. Dec. 782. Claro que el tribunal puede bajo dicho precepto, a iniciativa propia, examinar las circunstancias que puedan justificar la mitigación o agravación de la pena, *State* v. *Arnold*, 39 Idaho 589, 229 Pac. 748,

mas no puede hacer entonces lo que el estatuto no le permite hacer de otro modo.

Actos específicos realizados después de dictada sentencia no pueden dar margen a la agravación, en reconsideración, de la pena impuesta, pues si ellos fueren constitutivos de delito, no pueden ser base para la imposición de castigo a menos que se someta a su autor a un proceso, con todas las garantías de la ley; y si no lo fueren, tampoco podrían ser base para que se impusiera, indirectamente, un castigo que la ley no autoriza ni permite imponer directamente. Véanse anotaciones en 134 A.L.R. 1267 y 86 A.L.R. 832. Tales actos específicos posteriores al pronunciamiento de la sentencia original, no son las circunstancias "que pueden justamente ser tomadas en consideración" por el tribunal, en agravación de la pena, según nuestro derecho escrito. Estando aquí la materia regida por estatuto, el quebrantamiento de sus disposiciones en perjuicio de los derechos del acusado, hacen la actuación del tribunal *nula*. En el caso de autos, por no entrar en juego la Ley Sobre Sentencias Probatorias—núm. 259 de 3 de abril de 1946 ((1) pág. 535)—no podrían ser considerados los informes pre-sentencia que se autorizan por las Reglas Federales de Enjuiciamiento Criminal, y que se autorizan expresamente también por la legislación de otras jurisdicciones. En *Williams* v. *New York*, 337 U.S. 241, 93 L. ed. 1337, citado en la opinión concurrente, el estatuto de Nueva York, N. Y. Criminal Code (McKinney, 1945) sec. 482, autorizaba expresamente el uso del récord penal previo del acusado así como de cualesquiera informes sobre "exámenes mentales psiquiátricos (sic) o físicos" y autorizaba además al tribunal a obtener cualquier otra información que le pudiera ayudar a determinar el tratamiento adecuado para el acusado. Tal cosa no puede hacerse en Puerto Rico, excepto en los casos en que el acusado, por no haber sido convicto anteriormente, puede ser elegible para la sentencia probatoria. Los artículos 320 y 321 del Código de Enjuiciamiento Criminal están en toda su fuerza y vigor en casos como el presente.

Véase *Due Process and Legislative Standards*, 101 U. of Pa. L. Rev. 257, 276; 49 Cal. L. Rev. 567, 48 Mich. L. Rev. 523.

A fin de realizar a plenitud la función sociológica de la justicia criminal, en su etapa inicial, según la vislumbran los más avanzados estudios de la penología moderna, el Juez, al imponer una sentencia, debe ponderar, en una valoración total de aquellos factores que afectan la personalidad del convicto, todos los elementos de juicio que le puedan llevar a determinar el medio más apropiado para su reajuste, bien mediante la suspensión de la ejecución de la sentencia o bien mediante su reclusión institucional por un período mínimo, luego del cual pueda ser puesto en libertad bajo palabra por el organismo administrativo correspondiente, si se opera en él, a través del tratamiento adecuado, el cambio favorable que tal cosa permita. En ese sentido es difícil—casi caprichosa—la labor del Juez, en aquellos casos, como el presente, en que no cuenta con la ayuda de oficiales probatorios que le pongan en condiciones de ejercer su discreción sabiamente. Una revisión de las piezas de legislación pertinentes en forma integrada y coordinada, se hace necesaria.

Como dice La Roe en *Parole with Honor*, a las págs. 185 y 186: ". . . La triste verdad es que en todo caso el juez necesariamente entra en el campo de los conjeturas cuando impone una sentencia. Es absolutamente imposible para él predecir cómo el convicto responderá al cuidado institucional, o cuál habra de ser su estado de salud, o hasta qué extremo podrá mejorar su estado mental, o si su actitud va a mejorar o a empeorar bajo supervisión. Al sentenciar a personas convictas de delitos nuestros jueces se ven obligados a jugar con los destinos humanos." Y a la página 194: "A todas las circunstancias alrededor de la comisión del delito se les debe dar consideración. Esto lo han tratado de hacer nuestras cortes, pero no han estado en condiciones de penetrar en el futuro para una predicción válida en cuanto al término dentro del cual el convicto podrá ser rehabilitado y puesto en condiciones de regresar a la sociedad que ha ofendido. Con la

sustitución de una filosofía de castigo por una filosofía de rehabilitación, es mucho menos importante hacer que la sentencia refleje la gravedad de la falta que el proveer para devolver el convicto a la sociedad cuando esté listo para ser devuelto. Y esa cuestión no puede determinarse al momento de imponer la sentencia." O, como dice Cantor en *Crime and Society*, pág. 94: "En ausencia de principios que la gobiernen, la personal predilección e idiosincracia del juez determina la naturaleza de la sentencia." Véanse también Jerome Hall, *Science and Reform in Criminal Law*, 100 U. of Pa. L. Rev. 787; MacCormick, *The Prison's Role in Crime Prevention*, 41 J. Crim. L. & Criminology, 42–43; Barnes and Teeters, *New Horizons in Criminology*, página 391 et seq., y página 598 et seq.

Aquí podemos decir, al igual que en el caso de *Meaders* v. *State*, 22 S.E. 527 (Ga., 1895), que "La presunción es que la sentencia originalmente impuesta constituía, en opinión del tribunal, una pena apropiada para el delito." Ninguna otra causa hubo para haberla alterado que la tentativa de evasión del peticionario. Y aunque, en ausencia de una causa específica para aumentar la pena debemos presumir que existieron motivos que justamente podían ser tomados en consideración por el juez sentenciador, *Nichols* v. *United States*, 106 Fed. 672 (C. A. 8, 1901), cuando el motivo que éste tuvo para hacerlo aparece claramente del récord, y el mismo no es uno propio para ser considerado por el tribunal, entonces la presunción de que existieron motivos adecuados desaparece, y la actuación del tribunal corre la suerte que le depare el estado de la legislación sobre la materia. El alcance de ésta aquí ya lo hemos visto.

El peticionario fué, de hecho, condenado a sufrir una pena de 4 a 5 años de presidio en adición a la de 3 a 5 años impuéstale originalmente, como consecuencia directa de su conducta, que produjo "situación de confusión y de desorden" en el tribunal. Esa conducta pudo haber sido castigada como *desa-*

*cato*, y sentenciado el peticionario a la pena *máxima* de 30 días de cárcel o $200 de multa, o ambas penas, a discreción del tribunal. Ley de 1º de marzo de 1902, según enmendada por la Ley 102 de 12 de mayo de 1937 (Leyes de 1936–37, pág. 250). Si esa conducta, aparte de desacato, constituía algún otro delito—no constituía el de fuga, ni el de tentativa de fuga, véase el artículo 152 del Código Penal como regía en esa fecha así como las enmiendas introducidas por las leyes 9, de 29 de diciembre de 1950 (Leyes de 1950–51, pág. 389) y 447 de 14 de mayo de 1952 ( (1) pág. 911)—no podía sentenciársele sin sometérsele a juicio. El hecho de que el juez sentenciador considerara la vía sumaria el medio más eficaz para castigar al acusado por su conducta ante el tribunal, no le autorizaba a dispensar de aquellas garantías básicas requeridas para poderle imponer una sentencia por el acto realizado, sustituyendo el juicio a que tenía derecho el acusado por el castigo sumario que le fué impuesto. Y si no era delito—fuera del de desacato—no podía ser sentenciado a pena alguna por un acto que no era penable. Aun si su conducta hubiera constituído en esa fecha el delito de tentativa de fuga, la pena *máxima* hubiera sido, en adición a la originalmente impuéstale, y según el estatuto entonces en vigor, *de mes y medio a seis meses de presidio*. En su lugar, el tribunal le impuso, por vía de reconsideración y sin juicio, una pena de 4 a 5 años de presidio, que agregó a la de 3 a 5 años, que originalmente consideró apropiada para el peticionario.

Por lo expuesto, soy de opinión que la sentencia de 7 a 10 años dictada en reconsideración, es nula y que el peticionario, habiendo ya cumplido la de 3 a 5 originalmente impuéstale, tiene derecho a su libertad.

---

Opinión disidente del JUEZ ASOCIADO SEÑOR SIFRE.

Disiento. Por los motivos expuestos por los Jueces Asociados, Sres. Negrón Fernández y Pérez Pimentel, el tribunal sentenciador al dictar la sentencia en reconsideración se ex-

cedió en sus facultades, y ejercitó poderes no conferidos por ley. El peticionario se encuentra privado de su libertad sin debido proceso de ley. Para mí, esta conclusión es inevitable.

La sentencia en reconsideración puede ser impugnada por hábeas corpus. "Es doctrina bien establecida que cuando una corte se excede en sus facultades o ejercita poderes que la ley no le ha conferido, la sentencia así dictada es nula y la prisión decretada en cumplimiento de la sentencia es ilegal y como tal anulable por medio de procedimientos de hábeas corpus". *Clemente* v. *Alvarez, Alcaide, etc., y El Pueblo*, 50 D.P.R. 784.

---

Opinión disidente emitida por el JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL.

Disiento. Entiendo como el Juez Negrón Fernández, con cuya opinión disidente concurro, que en este caso se violaron derechos fundamentales del acusado.

No puede negarse que la supuesta tentativa de fuga del acusado fué lo que movió al juez sentenciador a reconsiderar su sentencia. Así lo admite dicho magistrado. Tampoco puede sostenerse que la conducta del acusado (su tentativa de evasión después del pronunciamiento de la sentencia) fuera solamente uno de los factores que influyeron en el ánimo de dicho magistrado para reconsiderar la sentencia. Fué el único factor. Hacemos esta afirmación basándonos en que cuando se dictó la sentencia original condenando al acusado a sufrir una pena de 3 a 5 años de presidio, el juez sentenciador tuvo ante sí todas las circunstancias del delito por el cual se había juzgado a dicho acusado, y además según manifestó el propio juez, él conocía sus antecedentes. ¿Qué otro factor podía considerar para fijar la pena? Los tuvo todos ante sí, y por tanto, con pleno conocimiento de dichos factores fijó la pena que a su juicio merecía el acusado. Ocurre después el incidente que le mueve a aumentar dicha pena y en efecto sustituye la original de 3 a 5 años de presidio por la de 7 a 10

años. A base de una doctrina sociológica se sostiene en la opinión de la mayoría que el juez sentenciador tenía dos alternativas para enfrentarse a la conducta violenta e inusitada del sentenciado, a saber, "o reconsiderar su anterior sentencia u ordenar el arresto del peticionario para un enjuiciamiento por el delito de tentativa de fuga", afirmándose además, que la reconsideración "se ajusta más al nuevo elemento inesperado de conducta antisocial que se desarrolla ante sus propios ojos, la que proveía el remedio más eficaz al noble error de su benignidad." Estas afirmaciones dejan entrever la realidad de lo que aquí ha ocurrido, o sea, que el aumento en la pena se hizo para castigar al acusado, no por el delito por el cual había sido ya juzgado y sentenciado, sino por la supuesta tentativa de evasión. En esa forma se le sentenció sumariamente sin ofrecérsele la más mínima oportunidad para defenderse, todo ello al amparo de las facultades que tienen los jueces para reconsiderar sus sentencias en causas criminales. Como resultado de ello se impuso al acusado varios años de presidio por aquel acto que ha sido caracterizado como una tentativa de fuga.

Nosotros no estamos justificando la conducta del acusado pero sí creemos firmemente que si tal conducta causó desorden en la corte a quo e interrumpió los procedimientos, la ley concedía al magistrado facultad para castigar sumariamente este acto como un desacato al tribunal. Mas una convicción por desacato, no acarreaba en ese caso, pena de presidio.

Se enfrenta a nuestro criterio el argumento de que el acusado en este caso no fué sentenciado por su tentativa de evasión sino que tal hecho solamente fué tomado en consideración por el juez sentenciador como una circunstancia de agravación del castigo. Si se entiende que el juez actuó haciendo uso de la facultad que le conceden los artículos 320 y 321 de nuestro Código de Enjuiciamiento Criminal no cabe duda que el procedimiento seguido viola dichas disposiciones legales. Decimos esto porque tan pronto como el acusado fué conducido

nuevamente a presencia del juez éste procedió en el acto y sin más trámite, a dejar sin efecto su sentencia original y a dictar la otra aumentando el castigo.

La opinión de la mayoría sienta la proposición de que cualquier acto o conducta realizado u observado por el acusado después del pronunciamiento de la sentencia puede ser considerado por el juez como elemento de agravación del castigo, siempre que dicho acusado no haya pasado a la custodia ejecutiva, aun en casos en que como el presente, al dictar sentencia el juez tenía ante sí todos los elementos necesarios para formar juicio respecto al delito cometido y al carácter y antecedentes del acusado. Por ejemplo, si mientras el sentenciado se encuentra en la oficina del alguacil del tribunal en espera de ser trasladado a la prisión, inesperadamente acomete y agrede a otra persona, podría ser conducido nuevamente ante el juez sentenciador para que éste, considerando ese hecho como una circunstancia de agravación, aumente, por vía de reconsideración, el castigo que ya había impuesto al acusado. Claro está que si a dicho acusado se le procesara también por el delito de acometimiento y agresión, él no podría alegar con éxito la defensa de exposición anterior. En esta forma se faculta al juez para hacer indirectamente lo que la ley expresamente prohibe, o sea, que se castigue dos veces a una persona por el mismo delito. Si bien los hechos de este caso se distinguen del anterior ejemplo, porque aquí el juez vió cuando el acusado corría, no por ello cambia la situación. El resultado final sería el mismo en ambos casos.

Creemos por lo expuesto y en adición a lo expresado por el Juez Negrón Fernández que la segunda sentencia dictada en este caso es nula y que por tanto, la petición de hábeas corpus debe prosperar.