ACASIO SANTIAGO MERCADO, Petitioner, v. JAMES M. JONES, WARDEN OF THE INSULAR PENITENTIARY, Respondent.

No. 589. Argued March 11, 1953.—Decided April 17, 1953.

*Acasio Santiago Mercado* in his own right.   *José Trías Monge, Secretary of Justice,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for respondent.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Petitioner herein Acasio Santiago Mercado asks us to set aside a sentence of imprisonment in the penitentiary at hard labor imposed on him by the former District Court of Puerto Rico, Mayagüez Section, on September 13, 1948, and to order his release from the penitentiary where he is confined by

580

virtue of an invalid sentence. The *Fiscal* of this Court agrees that the judgment rendered is void and that petitioner shoud be discharged.

The essential facts for determination are the following: On July 30, 1948 the Prosecuting Attorney for the District of Mayagüez, Baldomero Freyre, filed an information against petitioner for the offense of burglary in the first degree; on September 7, 1948, the Assistant Prosecuting Attorney of the District Court of Mayagüez, Julio Fernández Cabrera, representing the People of Puerto Rico, and the defendant Acasio Santiago Mercado, assisted and represented by counsel, Ildefonso Freyre, appeared at the trial of the case where defendant was found guilty of burglary in the first degree; on September 13, 1948 the accused appeared assisted and represented by counsel Ildefonso Freyre to hear the pronouncement of sentence and according to the minutes book of the trial court, the following incidents took place:

"Upon being asked, defendant stated, through counsel, that there is no legal impediment for passing sentence on him.

"The Court asks defendant if prior to the commission of this offense, he has been sentenced (I mean) convicted, sentenced and imprisoned for any other offense; he answers affirmatively.

"Therefore, defendant is not eligible for parole and the Court sentences him to an indeterminate sentence of from three to five years in the penitentiary at hard labor, without costs and he is entitled to have deducted any time he was in prison while awaiting this trial.

"After hearing sentence, defendant escaped and was captured by the marshals of the Court with the aid of a Penal Guard.

"Defendant is again taken to the Court and the *judge reconsiders his original sentence* of from three to five years in the penitentiary at hard labor and sentences him to serve from seven to ten years' imprisonment in the penitentiary at hard labor with the same credit for the time he was in prison while awaiting trial, without costs."

After the corresponding appeal to this Court, which was dismissed for lack of jurisdiction, the prisoner passed from

the judicial custody, under which he remained while awaiting trial, to the executive custody, where he still is.

The legal grounds on which petitioner rests for seeking the annulment of the sentence imposed on him, are the following: (1) that the trial court had no power to recall the original sentence and impose another sentence on petitioner inasmuch as pursuant to § 44 of the Penal Code of Puerto Rico, an offender can not be exposed twice for the same offense; (2) that having the trial court originally imposed on defendant a briefer sentence, the fact that it subsequently imposed on him a severer one constituted a breach of his constitutional rights.

The essential facts and the legal grounds set up in this appeal compel us to examine four specific propositions: (1) the power of a trial judge to reconsider a sentence; ( 2) the pcwer of a trial judge to set aside a brief sentence, and impose upon reconsideration, a severer one; (3) the possible violation of petitioner's constitutional rights and (4) the possible error that might have been committed by the trial judge under the circumstances surrounding the passing of sentence.

▬ (1) The power of a trial judge to reconsider a sentence within a criminal prosecution is limited by certain rules which must be clarified before reaching a definite conclusion. The first rule is that the offender must be still under the custody of the trial court, without having undergone any part of the original sentence; the second rule is that reconsideration does not lie unless there is a mistake in the name, in the punishment imposed, or in the application of the law to the proved facts in the prosecution, which might justify the reconsideration of the original sentence; and third that certain circumstances justifying the mitigation or aggravation of the sentence must be present. *Arroyo* v. *People*, 41 P.R.R. 727 (1931); *People* v. *Carbone*, 59 P.R.R. 608 (1941); *Meaders* v. *State*, 22 S. E. 527 (1895); *Nichols* v. *United States*, 106 Fed. 672 (1901); 168 A.L.R. 706 (1945).

(2) The power of a trial judge to set aside a briefer sentence and upon recalling the accused impose on him a heavier one is essentially controlled by the constitutional clause of double jeopardy. Probably it would be convenient to illustrate when double jeopardy may occur upon the reconsideration of a sentence. Double jeopardy occurs when the sentence on reconsideration is rendered after the defendant has passed from the judicial custody to the executive in order to serve the sentence imposed on him. It is well known that from the moment that a defendant is arrested until he is sentenced, he is under the custody of the court.

Sections 327 and 330 of the Code of Criminal Procedure of Puerto Rico establish the procedure to be followed after sentence is rendered. The former provides that "When a judgment has been pronounced, a certified copy of the original thereof must be forthwith delivered to the officer whose duty it to execute the judgment, and no other warrant or authority is necessary to justify or to require its execution"; and the latter that "If the judgment is for imprisonment in the penitentiary, the proper officer of the court, must, upon receipt of a certified copy thereof, take and deliver the defendant to the warden of the penitentiary," indicated by the executive. The power of the court ends when the prisoner passes into the custody and control of the warden of the penitentiary and this action determines the beginning of the executive custody. *Miller* v. *Snook* 15 F.(2d) 68 (1926).

(3) The rule that a trial judge has power to set aside a judgment and upon reconsideration increase it while the defendant is still under the court's custody, has been almost uniformly upheld by the courts *Miller* v. *Snook, supra; De Maggio* v. *Coxe,* 70 F.(2d) 840 (1934); *Rowley* v. *Welch,* 114 F.(2d) 499 (1940). Where the defendant is under judicial custody, any mitigation or increase of the new sentence rendered is not considered as a double jeopardy and therefore the defendant is not deprived of any constitutional right on such ground.

Does the aggravation upon reconsideration, of any sentence which was originally briefer, violate the constitutional clause of due process of law? Due process is one of those elastic formulas of substantial justice which is not susceptible of a generic definition. It is not a constant rule which by its own virtuality may be applied independently of the attendant circumstances of the case. Historically it was considered as that process most congruent to the customary standards of the people:—*per legem terrae*—, equivalent in a sense to the more conservative phrase of *"secundum normam legis"* of Romanic origin. Therefore, it not only concerns a due "process" of law, but also certain rules of substantive nature. Essentially its procedural nature consists in the opportunity to be heard. Its purely substantive nature consists in a restriction imposed on the democratic government in regard to its confiscatory actions that may affect the right, liberty or property of the citizen. Sometimes it is difficult to draw a line between the purely adjective and the purely substantive elements. Up to a certain extent each application of due process may confront the possibility of a confiscatory invasion of a substantive type and the possibility of a total absence of defense of an adjective type.

In criminal law, however, due process is more directly connected with the purely procedural aspect of the doctrine. Due process reduced to its most categorical terms consists of the following elements: (1) a specific criminal accusation, notified to the defendant; (2) a reasonable opportunity to answer said accusation; (3) an opportunity to confront the adverse evidence and contradict it; (4) an opportunity to introduce evidence for the defense. No fact which has not been proved within the due process of law pursuant to the legal technique prescribed for the admission of evidence, shall be considered to determine *the defendant's guilt.*

But once defendant is found guilty, the rule of due process, if applicable, is essentially limited to the following procedural elements: (1) inquiry by the judge from the party or its counsel as to the reasons which may exist for not entering judgment against him; (2) an opportunity to the defendant for requesting permission from the court to introduce mitigating evidence on "the extent of the punishment" to be imposed, when the imposition of said punishment has been left to the trial judge's discretion, §§ 320 and 321 of the Code of Criminal Procedure,—*The People* v. *Valcourt*, 16 P.R.R. 692; (3) pronouncement in the presence of defendant so that he may take the corresponding exceptions, move for reconsideration of any erroneous or arbitrary sentence, or appeal therefrom on a fixed date. As to the imposition of the punishment in itself, it is clear, that unless the court is requested for an opportunity to introduce evidence of aggravation or mitigation, the same is not a part of the due process. It is likewise clear to us that the power of a judge to reconsider a sentence is not a part of any constitutional right of the defendant, provided the punishment assessed is within the statutory limits.

Although the power of a judge to impose a heavier sentence on reconsideration while the defendant is under the court's custody is not in issue, appellate courts at times give an opportunity to review the possible merits of the aggravation in order to protect the sound practice of the courts that sentences should not be unreasonable, oppressive or vindictive. The more science progresses on the behavior of man, the greater the emphasis that must be put on the theory that the sentence imposed on a public offender should not go beyond the range necessary to prepare him for his social reform.

■ (4) The possible error that might be committed by a trial judge in imposing on reconsideration a heavier sentence than the original one, is governed by the circumstances under which the aggravation of the sentence was produced. *Peterson* v. *United States*, 246 Fed. 118, 119 (917). At the

hearing of the appeal before this Court, the *Fiscal*, without petitioner's objection, offered a sworn statement of Mr. Rodolfo Ramírez Pabón, the trial judge, which insofar as pertinent states:

"Q. Did defendant, his counsel or the prosecuting attorney move for reconsideration of the sentence?

"A. Defendant's counsel as well as the prosecuting attorney were present when the defendant was sentenced and neither counsel nor prosecuting attorney asked for reconsideration.

"Q. Then the court—I believe, *because of defendant's conduct —reconsidered the sentence?*

"A. Evidently, that is so.

"Q. Was the original sentence of from three to five years in harmony with the law pursuant to the punishment provided by § 410 of the Penal Code for the offense of burglary in the first degree which is from 1 to 15 years?

"A. Yes, sir.

"Q. If he had not attempted to escape, you would not have reconsidered the sentence?

"A. There is no doubt that defendant's attitude, *whose criminal record I knew, and the state of confusion and disorder which he caused in court* by his escape *were factors that prompted me to reconsider the sentence.*

"Q. Was defendant not prosecuted for a violation of § 152 of the Penal Code?

"A. He was not prosecuted for escaping.

"Q. Was defendant's counsel present when the sentence was reconsidered?

"A. Yes, sir, defendant's counsel was present.

"Q. Is there anything else that you wish to add to your testimony?

"A. I believe that what has been said is sufficient inasmuch as the testimony which I have given is in my opinion, a true statement of what took place on that occasion.

"Q. Does my colleague believe that the persons, who participated in the capture, marshals and penal guards, would not add anything to your testimony?

"A. I am under the impression that their testimony would be substantially the same as mine.

"Q. Was defendant arrested within the court's building?

"A. When he was going downstairs, he did not leave the building."

Undoubtedly, one of the reasons for reconsidering the sentence in the instant case is defendant's attempt to obstruct the course of justice, precisely at the time when he was being sentenced for the first time by the trial judge. When the marshals succeeded in overtaking him, they took him again to the trial judge who almost instantly proceeded to sentence him for the second time. Was it within the judge's powers to reconsider the original sentence imposing a heavier one? We must answer in the affirmative. Was he justified in increasing the original sentence? Undoubtedly the original sentence was extremely light for a second offender. Instead of acknowledging the friendly and liberal attitude of the court, the offender assumes right in the presence of the trial judge, a truculent attitude, of open contempt to the judicial authority creating "a state of confusion and disorder" in the court. It is not surprising therefore, that in view of this unusual provocation, the judge felt constrained to reconsider the former sentence.

After an accused is found guilty the mission of the judge is different. While his main duty during the criminal prosecution which leads to the conviction is to insure a spotless proceeding by virtue of which a human being is to be deprived of his liberty, however, upon passing sentence he must consider other risks. His position is that of a sociologist faced with the problem of human behavior. He must study not only the wrong which may be caused to defendant by an unusual or retaliatory punishment but also the wrong which any inadequate or ineffective punishment may be caused on society. In imparting justice one of the elements of judgment that the trial judge may consider in determining what sentence should be imposed in each case, is the degree of adaptability that an offender may still develop for the peaceful acceptance of the legal practices established by public order.

The antisocial conduct constitutes an individual problem which must be decided in accordance with its own merits, within the highest ideals of service to mankind. But this does not mean that a trial judge ought to let the coercive power of the state dwindle into a vicious romanticism which would tend to become a specious rule of justice.

The trial judge had two alternatives to confront the truculent or unusual attitude of the offender: to reconsider his original sentence or to order petitioner's arrest for a new trial. Of the two he chose the best suited to the moment of passing judgment, the one that best fitted the new and unexpected element of antisocial behavior which takes place before his own eyes, the one which provided the most effective remedy to his noble error of leniency. With power to do so and it being directly fitting at said particular time, it seems to us that to order a new trial would be to indulge in a legalistic nicety of slight constructive value.

The writ shall be discharged.

MR. CHIEF JUSTICE SNYDER, concurring.

I concur in the judgment of the Court and am in substantial agreement with the opinion of Mr. Justice Belaval. However, I cannot concur in the discussion of due process of law contained therein. For me there is no question of due process of law involved in this case. *Cf. Townsend* v. *Burke,* 334 U. S. 736; *Keenan* v. *Burke,* 342 U. S. 881; *Williams* v. *New York,* 337 U. S. 241; *Due Process and Legislative Standards in Sentencing,* 101 U. of Pa. L. Rev. 257.

In resentencing the defendant, who was represented by counsel, the trial court took into consideration certain conduct and acts of the defendant which took place in the presence of the court. I cannot see how we can say that in so doing (1) it violated §§ 320 and 321 of the Code of Criminal Procedure, and (2) that such alleged violation rendered the judgment void and therefore subject to attack by habeas corpus.

Mr. Justice Negrón Fernández, dissenting.

After having thoroughly examined the questions involved in this proceeding, I dissent. I shall briefly explain the grounds for my dissent.

I accept, because it is a good rule of law, that the trial judge had authority to reconsider the sentence of from three to five years' imprisonment in the penitentiary imposed on petitioner herein. The opinion of the Court correctly sets forth the general rule to that effect as well as the specific rules within which said authority may and should be exercised. It summarizes those rules thus: "The first rule is that the offender must be still under the custody of the trial court, without having undergone any part of the original sentence; the second rule is that reconsideration does not lie unless there is a mistake in the name, in the punishment imposed, or in the application of the law to the facts established in the case, which might justify the reconsideration of the original sentence; and third, that certain circumstances justifying the mitigation or aggravation of the sentence must be present. *Arroyo* v. *People*, 41 P.R.R. 727 (1931); *People* v. *Carbone*, 59 P.R.R. 608 (1941); *Maeders* v. *State*, 22 S. E. 527 (1895); *Nichols* v. *United States*, 196 Fed. 672 (1901); 168 A.L.R. 706 (1945)."

In the instant case the first rule is fulfilled. Defendant was still under the custody of the court, and therefore the execution of the original sentence imposed on him had not yet been undertaken. Under such circumstances there was no constitutional inhibition precluding the reconsideration on the ground of the double jeopardy.

The second rule, however, is not fulfilled herein; inasmuch as the reconsideration was not intended to correct "a *mistake* in the name, *in the punishment imposed*, or in the application of the law to the facts established in the case." (Italics supplied.) The sentence in the instant case was reconsidered in order to increase the penalty, taking into

consideration facts which took place *after* the original sentence was passed. The latter was fixed by the judge in the exercise of those elements of discretion within his reach and which he considered proper in order to graduate the punishment which he ought to impose: the facts which were found proved in the prosecution and defendant's condition as an exconvict which, although not alleged in the information, became known to him at the time and constituted, undoubtedly, sufficient proof of defendant's previous conduct and character which the judge could lawfully take into consideration. There is nothing in the record indicative that the trial judge committed error in evaluating those elements, upon imposing the original sentence, which needed correction.

The third rule, in my opinion, is not fulfilled either. The "circumstances justifying the mitigation or aggravation of the sentence" do not concur herein. Specific facts which took place after the sentence was imposed, whether or not criminal, are not the *aggravating circumstances* "which may be properly taken into view" by the court to determine the extent of the punishment pursuant to the authority vested in it under § 320 of the Code of Criminal Procedure which provides: "After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party *that there are circumstances which may be properly taken into view either in aggravation or mitigation* of the punishment, may, in its discretion, hear the same summarily at a specified time, and upon such notice to the adverse party as it may direct." (Italics supplied.)

As a complement to the former provision, § 321 of the said Code provides:

"The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a justice of the peace of the district, out of court, upon such notice to the adverse party as the court may direct.

No affidavit or testimony or representation of any kind, verbal or written, can be offered to *or received by the court* or a judge thereof in aggravation or mitigation of the punishment, except as provided in this and the preceding section."

Defining the scope of an identical statutory provision in *People* v. *Rudolph*, 153 P. 721 (Cal., 1915) it was stated: "The manifest object of the section [1204 of the California Penal Code] is to authorize the court, after a conviction has been had and before sentence is pronounced in any criminal case, to receive testimony either in mitigation or aggravation of the punishment to be imposed. To this end any testimony bearing upon the character or the antecedents of the convicted person—*whether he has theretofore been of good* or *bad character* or *borne a good or bad reputation* or *been previously convicted* of some offense against the law—may be presented to the court." (Italics supplied.) 8 Cal. Jur., § 478, p. 460. See, also, 2 Alexander, *The Law Arrest*, § 765, p. 1931 *et seq.* for the scope attributed to the term "aggravating circumstances" when increases in the punishment are involved, as well as *Ingram* v. *State*, 39 Ala. 247, 84 Am. Dec. 782. Of course the court may, under said provision, *motu proprio*, examine the circumstances which may justify the mitigation or aggravation of the punishment, *State* v. *Arnold*, 39 Idaho 589, 229 P. 748, but then it can not do what the statute otherwise does not provide for.

Specific acts performed after a sentence has been entered can not give rise to the aggravation, upon reconsideration, of the punishment imposed, for if said acts constituted an offense, they can not be a basis for the imposition of a punishment unless the offender is prosecuted, with every safeguard thrown about him; and if said acts did not constitute an offense, neither would they be a basis for the imposition, indirectly, of a punishment which the law does not authorize nor allows to be imposed directly. See annotations in 134 A.L.R. 1267 and 86 A.L.R. 832. Said specific acts which are subsequent to the pronouncement of the original sentence are

not the circumstances "which may be properly taken into view" by the court, in aggravation of the penalty, according to our statutory law. Since the matter is here regulated by statute, the violation of its provisions to the prejudice of defendant's right renders the court's action *void*. In the case at bar, since the Act for the Establishment of Suspended Sentences does not come into play—No. 259 of April 3, 1946 (Sess. Laws, p. 534)—the pre-sentence reports authorized by the Federal Rules of Criminal Procedure and which are also expressly authorized by the legislation of other jurisdictions could not be considered. In *Williams* v. *New York*, 337 U. S. 241, 93 L. ed. 1337, cited in the concurring opinion, the statute of New York, N. Y. Criminal Code (McKinney, 1945) § 482, expressly authorized the use of defendant's previous criminal record as well as any reports on "mental phychiatric [*sic*] or physical examination" and it further authorized the court to seek any information that will aid the court in determining the proper treatment of such defendant. Such a thing can not be done in Puerto Rico, except in those cases in which the defendant, being a first offender, is eligible for probation. Sections 320 and 321 of the Code of Criminal Procedure are in full force and effect in cases like the one at bar. See *Due Process and Legislative Standards*, 101 U. of Pa. L. Rev. 257, 276; 49 Cal. L. Rev. 567, 48 Mich. L. Rev. 523.

In order to carry out fully the sociological function of criminal justice, at its initial stage, as foreshadowed by the advanced studies on modern penology, the judge, upon passing sentence should weigh, in a comprehensive consideration of those factors which are particular to each offender, all these elements of judgment which may aid him in determining the most adequate means for his rehabilitation, whether by suspension of the sentence or by institutional confinement for a minimum term, after which he shall be paroled by the corresponding administrative body, if he experiences, after an adequate treatment, a favorable change

which may render it possible. In that sense the mission of a judge is difficult—almost guesswork—in those cases, as here, where he can not rely on probation officers who may guide him in the intelligent exercise of his discretion. A revision of the pertinent statutes in an integrated and coordinated manner, is imperative.

As La Roe *in Parole with Honor* states, at pages 185 and 186: "... The sad truth is that in every case the judge necessarily indulges in guesswork when he imposes a sentence. It is utterly impossible for him to predict how the prisoner will respond to institutional care; or what his health will be; or to what extent his mind will improve; or whether his attitude will become better or worse under supervision. In sentencing prisoners our judges are forced to gamble with human destinies." And at page 194: "All the circumstances surrounding the commission of the crime must be given consideration. This our courts have attempted to do, but they have not been able to look into the future and make a valid prediction as to the time when the offender shall have been rehabilitated and made ready for his return to the community which he has wronged. With the shift in emphasis from a philosophy of punishment to a philosophy of rehabilitation, it is far less important to make the sentence reflect the seriousness of the offense than it is to provide for the restoration of the offender to the community when he is ready to be restored. And that matter cannot be determined at the time when sentence is imposed." Or, as Cantor states in *Crime and Society*, p. 94: "In the absence of guiding principles, the personal predilections and idiosyncrasies of the judge influence the nature of the sentence." See also, Jerome Hall, *Science and Reform in Criminal Law*, 100 U. of Pa. L. Rev. 787; MacCormick, *The Prison's Role in Crime Prevention*, 41 J. Crim. L. & Criminology, 42–43; Barnes and Teeters, *New Horizons in Criminology*, p. 391 *et seq.* and p. 598 *et seq.*

We can also say, as in *Meaders v. State*, (Ga., 1895) 22 S. E. 527, that "The presumption is that the sentence first

imposed was, in the opinion of the court, a proper punishment for the offense, ...." There was no other cause for altering the sentence than petitioner's attempt to escape. And although, in the absence of a specific cause to increase the punishment we must presume that the trial judge did so from right and proper motives, *Nichols* v. *United States*, 106 F. 672 (C. A. 8, 1901), when his reason to enhance the punishment clearly appears from the record, and it is not fit for consideration by the court, then the presumption that there were adequate reasons is eliminated, and the court's action is subject to the prevalent legislation on that matter. We have already seen the scope of the law herein.

The petitioner was actually sentenced to a term of four to five years' imprisonment in the penitentiary in addition to the original sentence of from three to five years imposed on him, as a direct result of his conduct, which produced "a state of confusion and disorder" in the court. Said conduct could have been punished as *contempt* and the petitioner sentenced to serve the *maximum* term of 30 days in jail or $200 fine, or both, at the court's discretion. Act of March 1, 1902 (Sess. Laws, p. 83), as amended by Act No. 102 of May 12, 1937 (Sess. Laws, p. 241). If said conduct, aside of contempt, constituted any other offense—it was not that of escape, nor attempt to escape, see § 152 of the Penal Code prevailing at that time, as well as the amendments introduced by Acts Nos. 9 of December 29, 1950 (Spec. Sess. Laws, p. 388) and 447 of May 14, 1952 (Sess. Laws, p. 910)—he could not be sentenced without trial. The fact that the trial judge considered summary judgment as the most efficacious means to punish defendant for his conduct at court, did not authorize him to dispense with those basic guarantees required for imposing on him a sentence for the offense committed, substituting the trial to which defendant was entitled for the summary punishment which he received. And if it was not an offense, —aside of contempt—he could not be sentenced to any term at all for an act which was not punishable. Even if his con-

duct would have constituted at that time the offense of attempt to escape, the *maximum* penalty would have been, in addition to the original sentence and pursuant to the statute then in force, of from *one and a half month* to *six months in the penitentiary*. Instead, the court sentenced him, by way of reconsideration and without a trial, to a term of from four to five years in the penitentiary, which he added to the sentence of from three to five years which he originally considered proper for the petitioner.

For the foregoing reasons, I believe that the sentence of from seven to ten years imposed on reconsideration, is void and that since petitioner has already served the original term of from three to five years, he is entitled to be discharged.

MR. JUSTICE SIFRE, dissenting.

I dissent. For the reasons set forth by Mr. Justice Negrón Fernández and Mr. Justice Pérez Pimentel, the trial Court, upon resentencing defendant, exceeded its authority and exercised powers not conferred by law. The petitioner is deprived of his liberty without due process of law. In my opinion, this conclusion is inescapable.

The sentence on reconsideration may be attacked by habeas corpus. "It is a well-established doctrine that when a court exceeds its authority or exercises powers which the law has not granted it, the judgment thus rendered is void and the imprisonment ordered in execution of that judgment is unlawful and as such may be annulled by means of a habeas corpus proceeding." *Clemente* v. *Alvarez, Warden,* 50 P.R.R. 747, 750.

MR. JUSTICE PÉREZ PIMENTEL, dissenting.

I dissent. I believe, same as Mr. Justice Negrón Fernández, with whose dissenting opinion I concur, that in this case fundamental rights of the accused were infringed.

It can not be denied that it was defendant's attempt to escape what moved the trial judge to reconsider his sentence.

Said magistrate admits it so. Neither can it be maintained that defendant's conduct (his attempt to escape after sentence was passed) was only one of the factors which prompted said magistrate to reconsider the sentence. It was the only factor. We make this assertion based on the ground that, when the original sentence was rendered imposing defendant a penalty of from three to five years' imprisonment in the penitentiary, the trial judge had before him all the circumstances of the offense for which said defendant had been tried, and furthermore, according to the statements made by the judge himself, he knew of defendant's past record. What other factor could he consider in fixing the punishment? He had them all before him, and therefore, with full knowledge of said factors he fixed the punishment which in his opinion defendant deserved. Then follows the incident which moves him to enhance the punishment and in fact substitutes the original sentence of from three to five years, imprisonment in the penitentiary for that of from seven to ten years. On the basis of a sociological doctrine it is maintained in the opinion of the court that the trial judge had two alternatives in dealing with the violent and unusual conduct of the defendant, to wit, "to reconsider his original sentence or to order petitioner's arrest for a new trial," it being further affirmed that the reconsideration is "the one that best fitted the new and unexpected element of antisocial behavior which takes place before his own eyes, the one which provided the most effective remedy to his noble error of leniency." These assertions give us a glimpse of what actually happened here, that is, that the penalty was increased to punish defendant, not for the offense for which he had already been tried and sentenced, but for the alleged attempt to escape. In that way he was sentenced summarily without granting him the least opportunity to defend himself, all of it under the guise of the authority that judges have to reconsider their sentences in criminal cases. As a result thereof, defendant was im-

posed several years' imprisonment in the penitentiary for an action which has been characterized as an attempt to escape.

We are not justifying defendant's conduct but we firmly believe that if such behavior occasioned disturbance in the court *a quo* and interrupted its proceedings, the law conferred powers to the magistrate to punish said action summarily as one of contempt to court. But a conviction for contempt, in said case, would not entail a sentence of imprisonment in the penitentiary.

We are faced with the argument that defendant in this case was not sentenced for his attempt to escape but that said fact was merely taken into consideration by the trial court as an aggravating circumstance. If it is meant that the judge acted under the authority granted by §§ 320 and 321 of our Penal Code, there is no doubt that the proceeding followed infringes said legal provisions. We make this statement because as soon as defendant was taken again before the presence of the judge, he proceeded immediately and without further proceeding to set aside the original sentence and imposed another increasing the punishment.

The opinion of the court lays down the proposition that any act or conduct performed or observed by defendant after sentence is passed, may be considered by the judge as an element of aggravation of the punishment, provided said defendant has not passed on to the executive custody, even in cases in which, as here, the judge, upon rendering sentence, had before him all the necessary elements to form an opinion with respect to the offense committed and the character and past record of the defendant. For example, if while the offender is still in the office of the marshal of the court waiting to be transferred to prison, he unexpectedly attacks and assaults another person, he could be brought again before the trial judge so that the latter, considering said fact as an aggravating circumstance, increase, by way of reconsideration, the punishment which he had already imposed on defendant. Of course, it is clear that if said defendant would

also be prosecuted for the offense of assault and battery, he could not successfully allege the defense of former jeopardy. Thus, in that way the judge is authorized to do indirectly what the law expressly forbids, that is, that a person be punished twice for the same offense. Although the facts in this case are distinguished from the above example, because here the judge saw when the defendant was actually running, that does not alter the situation. In both cases the final outcome would be the same.

For the reasons stated above and in addition to what Mr. Justice Negrón Fernández has set forth, we believe that the second sentence rendered in this case is void and that therefore, the writ of habeas corpus should issue.